**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juana Espericueta De GROSS,**
**Defendant–Appellant.**

**No. 87–5226.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 1988.

Decided Sept. 10, 1990.

WIGGINS, Circuit Judge:

A jury convicted Juana Espericueta De Gross of two counts of aiding and abetting the transportation of an alien within the United States. De Gross appeals her conviction, contending that the district court erred in: (1) denying her peremptory challenge of a male venireperson; and (2) accepting the government's peremptory challenge of the only Hispanic venireperson. We have jurisdiction under 28 U.S.C. § 1291 (1988). We reverse.

## BACKGROUND

De Gross pled not guilty to three counts of aiding and abetting the transportation of an alien within the United States.[1] During voir dire, the government objected to De Gross' peremptory challenge of Wendell Tiffany, a male venireperson. At that point, De Gross had successfully exercised seven peremptory challenges against male venirepersons. The government argued that this pattern of striking males established De Gross' discriminatory intent to exclude male venirepersons in violation of their constitutional rights to the equal protection of the laws. The district court ruled that the government had established a prima facie case of purposeful discrimination, and required De Gross to justify her challenge. De Gross offered no explanation. The court then disallowed her peremptory challenge of Tiffany.

De Gross also made an equal protection objection during voir dire. De Gross objected to the government's challenge of Herminia Tellez, a Hispanic woman. Tellez was then the only Hispanic on the venire.[2] The district court ruled that De Gross established a prima facie case of discrimination, and required the government to justify its challenge. Government counsel responded that his main reason for challenging Tellez was "to get a more representative community of men and women on the

Edmundo Espinoza, San Diego, Cal., for defendant-appellant.

Larry A. Burns, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before PREGERSON, WIGGINS and BRUNETTI, Circuit Judges.

---

1. Prior to trial, the government dismissed Count 1 of the three count indictment.

2. The record indicates that there may have been another Hispanic on the venire, but the judge excused her earlier for cause.

jury." [3]   The court accepted the government's explanation and struck Tellez.

The impaneled jury, consisting of three men, including Tiffany, and nine women, convicted De Gross of the crimes charged. De Gross timely appealed.

## STANDARD OF REVIEW

Whether equal protection principles prohibit a party from exercising peremptory challenges on the basis of a venireperson's gender is a question of law that we review de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

### I.   *De Gross' Challenge of Tiffany*

De Gross argues that the district court erred in denying her peremptory challenge of Tiffany, a male venireperson. At trial, the government had objected to De Gross' challenge on the ground that De Gross exercised it with discriminatory intent, and therefore, if the district court struck Tiffany, that would violate Tiffany's equal protection rights.[4]   We must first decide whether the government has standing to make this objection. If so, we must decide whether equal protection principles prohibit a criminal defendant from exercising her peremptory challenges on the basis of a venireperson's gender. If equal protection principles do prohibit such conduct, we must decide finally whether De Gross did exercise her peremptory challenge with discriminatory intent.

### A.   The Government's Standing to Object to De Gross' Peremptory Challenge

In *Batson v. Kentucky*, the Court held that a prosecutor's discriminatory peremptory challenge violates the defendant's right to equal protection of the laws because the defendant is entitled to be tried by a jury chosen pursuant to racially nondiscriminatory criteria. 476 U.S. at 85–89, 106 S.Ct. at 1716–19. The Court also held, however, that "racial discrimination in the selection of jurors harms not only the accused," but also the excluded juror and the entire community. *Id.* at 87, 106 S.Ct. at 1718. The Court stated that "by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror." *Id.* (citing *Carter v. Jury Comm'n of Greene County*, 396 U.S. 320, 329–30, 90 S.Ct. 518, 523–24, 24 L.Ed.2d 549 (1970)). We hold that the United States may object to a criminal defendant's discriminatory peremptory challenge because the United States has standing to assert the equal protection rights of the venireperson sought to be excluded.[5]

First, the government's relationship to the venireperson is sufficient to ensure that it will vigorously defend his or her rights. *See Singleton v. Wulff*, 428 U.S. 106, 114–15, 96 S.Ct. 2868, 2874–75, 49 L.Ed.2d 826 (1976). The government has a direct interest in protecting the rights of its

---

**3.** At that point, ten women and two men were seated in the jury box, and the remainder of the venire contained six women and one man.

**4.** Because the district court did not accept De Gross' challenge, the procedural posture of this case is somewhat different from that in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), where the Supreme Court found a violation of the equal protection clause in a state court's acceptance of a prosecutor's discriminatory peremptory challenge. This difference, however, does not render the government's equal protection objection nonjusticiable. *See Barrows v. Jackson*, 346 U.S. 249, 253–54, 73 S.Ct. 1031, 1033–34, 97 L.Ed. 1586 (1953) (proper for state court to refuse to enforce racially restrictive covenant against house seller

because judicial enforcement would constitute state action in violation of the fourteenth amendment).

**5.** In *Holland v. Illinois*, — U.S. ——, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), five justices agreed that the principles and concerns expressed in *Batson* implied that a *defendant* would have standing to object to the prosecution's discriminatory exercise of its peremptory challenges by relying on the equal protection rights of the venirepersons and the interests of the general public. *Id.* 110 S.Ct. at 811–12 (Kennedy, J., concurring); 110 S.Ct. at 813–14 (Marshall, J. dissenting); 110 S.Ct. at 821–22 (Stevens, J. dissenting). This recognition of third-party standing logically extends to the United States.

citizens, including potential jurors. Additionally, the government has an interest in maintaining a venireperson's perception of the criminal justice system as fair, impartial, and free from discrimination. The mere existence of discriminatory practices in jury selection "cast[s] doubt on the integrity of the whole judicial process." *Peters v. Kiff,* 407 U.S. 493, 502–03, 92 S.Ct. 2163, 2168–69, 33 L.Ed.2d 83 (1972). Selection procedures that violate a venireperson's equal protection rights "undermine public confidence in the fairness of our system of justice." *Batson,* 476 U.S. at 87, 106 S.Ct. at 1718.

Second, several obstacles exist to prevent an excluded venireperson from asserting his own rights. *See Singleton,* 428 U.S. at 115–16, 96 S.Ct. at 2874–75. In the context of racial discrimination, Justice Kennedy has noted that:

> Individual jurors subjected to peremptory racial exclusion have the legal right to bring a suit on their own behalf, *Carter v. Jury Comm'n of Greene County,* 396 U.S. 320 [90 S.Ct. 518, 24 L.Ed.2d 549] (1970), but as a practical matter this sort of challenge is most unlikely. The reality is that a juror dismissed because of his race will leave the courtroom with a lasting sense of exclusion from the experience of jury participation, but possessing little incentive or resources to set in motion the arduous process needed to vindicate his own rights.

*Holland,* 110 S.Ct. at 812 (Kennedy, J., concurring). Even if a civil suit were brought by excluded jurors, it may prove to be an ineffective remedy against discrimination by defendants. *See* Note, *Discrimination by the Defense: Peremptory Challenges After Batson v. Kentucky,* 88 Colum.L.Rev. 355, 367 (1988).

In other situations, a venireperson may not be aware initially that he or she has been discriminated against. Such discrimination may not become apparent until a number of similarly situated venirepersons have been struck. Also, the venireperson is not a party to the litigation and, therefore, may not be in a position to complain to the trial judge that her right not to be excluded from jury service on the basis of her group membership has been violated. Thus, she may lack an immediate remedy for her unconstitutional exclusion from the trial.

Third, violation of the venireperson's rights injures the United States by impugning the jury system. In addition, when a criminal defendant, through discriminatory peremptory challenges, attempts to achieve a jury partial to her, the government's interest in fair trials is injured. *See Singer v. United States,* 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965) ("[T]he Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result.")

We therefore conclude that the government has standing to object to De Gross' peremptory challenge of Tiffany under these circumstances.

**B. Gender–Based Peremptory Challenges [6]**

■ In *Batson,* the Supreme Court held that the equal protection clause of the fourteenth amendment prohibits a prosecutor from exercising peremptory challenges on the basis of a venireperson's race. 476 U.S. at 89, 106 S.Ct. at 1719. We now address the question whether the principles established in *Batson* compel us to prohibit the exercise of peremptory challenges on the basis of the venireperson's gender.[7] At

---

**6.** This case raises issues relevant only to the exercise of peremptory challenges. It does not concern the exercise of challenges for cause, nor the range of reasons that might constitute cause in a given case.

**7.** *Batson* involved a state defendant and thus engaged in equal protection analysis pursuant to the fourteenth amendment. This case involves a federal defendant, and thus our equal protection analysis is based on the due process clause of the fifth amendment. *See Bolling v. Sharpe,* 347 U.S. 497, 498–500, 74 S.Ct. 693, 694–95, 98 L.Ed. 884 (1954). Of course, we approach equal protection claims under the fifth amendment in the same fashion as such claims under the fourteenth amendment. *See Weinberger v. Wiesen-*

the outset, however, we must note that the constitution treats gender classifications differently than racial classifications. While the constitution will not allow racial classifications unless they are suitably tailored to serve a compelling state interest, the constitution tolerates gender classifications that are substantially related to the achievement of important governmental objectives. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440–41, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985) (discussing the different levels of constitutional scrutiny to which different classifications are subjected). Peremptory challenges are a necessary means for achieving the important governmental objective of impaneling a fair and impartial jury. *See Swain v. Alabama,* 380 U.S. 202, 211–12, 85 S.Ct. 824, 831–32, 13 L.Ed.2d 759 (1965); *Batson,* 476 U.S. at 123, 106 S.Ct. at 1737 (Burger, C.J., dissenting). A party is not always able to justify his sudden and immediate impression that a particular venireperson will be partial. *See id.; Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892).

■ But challenges explained by a venireperson's gender are not based on a party's sudden impression of a particular venireperson's ability to be impartial. Rather, like racial challenges, they are based either on the false assumption that members of a certain group are unqualified to serve as jurors, *Batson,* 476 U.S. at 86, 106 S.Ct. at 1717 (citing *Norris v. Alabama,* 294 U.S. 587, 599, 55 S.Ct. 579, 584, 79 L.Ed. 1074 (1935)), or on the false assumption that members of certain groups are unable impartially to consider the case against a member or a non-member of their group, *cf. Batson,* 476 U.S. at 89, 106 S.Ct. at 1719

(assumption that members of a certain group are unable to consider a case against a member of their group is false). Peremptory challenges exercised on the basis of a venireperson's gender, therefore, are not substantially related to achieving an impartial jury. *See id.* at 98–99, 106 S.Ct. at 1723–24 (prohibiting discriminatory peremptory challenges will not undermine the contribution of peremptory challenges to the administration of justice).

In addition to their failure to relate substantially to the important governmental interest of an impartial jury, gender-based peremptory challenges also fail to relate substantially to other important governmental interests including public confidence in the judicial system and the absence of community prejudice. Racial discrimination during jury selection harms the excluded venirepersons, undermines public confidence in the judicial system, and stimulates community prejudice. *Id.* at 87, 106 S.Ct. at 1718. Because gender discrimination during jury selection is not substantially related to the achievement of an important governmental interest, the fifth amendment's equal protection principles compel us to prohibit peremptory challenges on the basis of gender.[8]

Peremptory challenges based on gender, like those based on race, harm the excluded venireperson because discriminatory challenges are based on group membership whereas juror competence depends upon an individual's qualifications. *Id.* Just as "a person's race simply 'is unrelated to his fitness as a juror,' " *Id.* at 99, 106 S.Ct. at 1724 (quoting *Thiel v. Southern Pac. Co.,* 328 U.S. 217, 227, 66 S.Ct. 984, 989, 90 L.Ed. 1181 (1946) (Frankfurter, J., dissenting)), so too a person's gender is unrelated to her ability to serve as a juror. *Taylor v.*

---

*feld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975).

**8.** We note that the Fourth Circuit did not come to this conclusion. *See United States v. Hamilton,* 850 F.2d 1038, 1042 (4th Cir.1988) (prosecutor's gender-related explanation for striking venirepersons was a neutral one because "no authority ... support[ed] an extension of *Batson* to instances other than racial discrimination"), *cert. dismissed, Washington v. United States,* —

U.S. ——, 109 S.Ct. 1564, 103 L.Ed.2d 931 (1989). In so holding, *Hamilton* relied upon the Court's language couched in racial terms. We believe that while the subject matter and hence the language of *Batson* involved race-based peremptory challenges, because current equal protection law mandates the application of heightened scrutiny to gender classifications, *Batson's* rationale applies equally well to gender-based peremptory challenges.

*Louisiana,* 419 U.S. 522, 537, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975). Gender bears no relationship to an individual's ability to participate on a jury. *Cf. Frontiero v. Richardson,* 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1973).

Furthermore, full community participation in the administration of the criminal justice system, whether measured by race or gender, is critical to public confidence in the system's fairness. *See Taylor,* 419 U.S. at 530, 95 S.Ct. at 697. A jury is not truly representative of the community unless both sexes have the same opportunity to serve. *See Ballard v. United States,* 329 U.S. 187, 193–94, 67 S.Ct. 261, 264–65, 91 L.Ed. 181 (1946). The exclusion of men, or of women, is as incongruous with traditional notions of the jury as a representative body " 'composed of the peers or equals of the person whose rights it is selected or summoned to determine,' " *Batson,* 476 U.S. at 86, 106 S.Ct. at 1717 (quoting *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664 (1880)), as exclusion of a racial minority.

And, just as racial discrimination in the judicial system is a stimulant to community prejudice that impedes fair treatment for racial minorities, *Batson,* 476 U.S. at 87–88, 106 S.Ct. at 1718–19, so too is gender discrimination in the judicial system a stimulant to community prejudice which impedes fair treatment for women. *See Personnel Administrator v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979) (like classifications based on race, gender classifications have traditionally been the touchstone for pervasive and often subtle gender discrimination).

We conclude, therefore, that equal protection principles prohibit peremptory challenges exercised on the basis of a venireperson's gender.

### C. Equal Protection Limits on Criminal Defendants' Peremptory Challenges

Our conclusion that equal protection principles prohibit gender-based peremptory challenges of venirepersons clearly applies to prosecutors. *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719. *Batson,* however, explicitly left open the question whether equal protection principles limit a criminal defendant's peremptory challenges. *Id.* at 89 n. 12, 106 S.Ct. at 1719. We hold that because the evils of discriminatory peremptory challenges result from the misuse of peremptory challenges, regardless of which party exercises the challenges, the fifth amendment similarly limits a federal criminal defendant's peremptory challenges.

Whether the prosecutor or the defendant exercises the challenges, the excluded venirepersons are harmed because discriminatory challenges are based on group membership whereas juror competence depends upon an individual's qualifications. *See supra* at 1422. And regardless of the source of the challenges, public confidence in the judicial system's fairness is undermined by discriminatory challenges. *See supra* at 1423. Thus, public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his membership in a constitutionally cognizable group such as race or gender.[9]

■ De Gross argues, however, that even if *Batson's* rationale logically applies to a criminal defendant's peremptory challenges, such conduct is not fairly attributable to the state, and therefore, the constitution's guarantee of equal protection does not limit it. We are convinced, however, that a criminal defendant's peremptory challenge is state action. First, the deprivation of the venireperson's equal rights is caused by the defendant's exercise of a right created by the State, the right to make peremptory challenges. *See* 28 U.S.C. § 1870 (1988); *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

**9.** Three vivid examples of a defendant's discriminatory use of peremptory strikes harming the system and public confidence are provided in Pizzi, *Batson v. Kentucky: Curing the Disease But Killing the Patient,* 104 S.Ct. Rev. 97, 153 (1987) (discussing race riots and public outrage over three Florida cases involving white or Hispanic defendants acquitted by all white juries after the defendants peremptorily struck all black venirepersons).

Second, comparison to state action cases reveals that a criminal defendant who exercises peremptory challenges can fairly be said to be a state actor because she makes "use of state procedures with the overt, significant assistance of state officials." *Tulsa Professional Collection Servs. v. Pope*, 485 U.S. 478, 486, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988). For example, in *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), a state court enforced a racially restrictive covenant signed by the seller of a house against the black buyers of the house. The Supreme Court found state action when the seller ceased voluntary adherence to the discriminatory covenant and the state court intervened to enforce it at the request of third parties. *Id.* at 19, 68 S.Ct. at 845. Similarly, state action occurs when a trial judge enforces a party's discriminatory peremptory challenge by excusing the challenged venireperson.

In *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), a black man challenged a restaurant's refusal to serve him as a violation of the fourteenth amendment. The restaurant leased its space, which was located in a publicly owned parking building operated in the public interest, directly from a state agency. The Court found that by allowing the restaurant to discriminate on state property, the state had effectively abdicated its duty not to discriminate. *Id.* at 723–25, 81 S.Ct. at 860–62. Here, peremptory challenges are exercised in a public federal building operated in the public interest. And if the trial judge were to accept a peremptory challenge without considering whether the challenge was exercised with discriminatory intent, the trial judge would effectively be abdicating his duty not to discriminate.

Pursuant to a state's statutory scheme, the defendant in *Lugar* filed an ex parte petition for a prejudgment writ of attachment of plaintiff's property in state court. 457 U.S. at 941, 102 S.Ct. at 2755. The court clerk issued the writ and the county sheriff executed it. The Supreme Court found the defendant's joint participation with state officials in the seizure of the disputed property sufficient to characterize the defendant as a state actor for purposes of the fourteenth amendment. *Id.* Likewise, the federal government also supplies the means for a criminal defendant to deprive venirepersons of their equal rights. The federal government summons citizens for jury service, *see* 28 U.S.C. §§ 1861–1869 (1988), and compels them to serve as jurors under threat of criminal prosecution, *see id.* at § 1864(b). The citizens must appear at the federal courthouse. Once there, they are assembled and instructed by federal court officials. Then, during the course of a federal judicial proceeding, and with the assistance of the trial judge, parties invoke judicial procedures which have the potential to deprive venirepersons of their constitutional rights.

Finally, in *Pope*, a state court denied a hospital's application for payment of a decedent's medical expenses based on the time bar of the state's nonclaim statue. 485 U.S. at 487, 108 S.Ct. at 1346. The statute's time bar ran two months after the court, in probate proceedings, appointed an administrator who then published notice to creditors of the estate and filed copies with the court. The Court found state action in the probate court's intimate involvement in the administrator's denial of the hospital's application. *Id.* Like the nonclaim statute in *Pope*, peremptory challenges are not self-executing. Like the administrator in *Pope*, a party seeking to exercise discriminatory peremptory challenges must necessarily rely upon the court to call citizens to serve as jurors, to begin the voir dire in a judicial proceeding, and to excuse challenged venirepersons.

Hence, we conclude that the constitution limits a criminal defendant's peremptory challenges because the defendant's action in striking venirepersons is fairly attributable to the state.

### D. De Gross's Challenge of Tiffany was Gender–Based

■ A litigant objecting on constitutional grounds to the challenge to a venireperson on the basis of gender establishes a prima facie case of purposeful discrimina-

tion first by showing that the peremptory challenge was exercised against a member of a constitutionally cognizable group. *See Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. Second, the litigant must demonstrate that this fact "and any other relevant circumstances raise an inference" that the offending party challenged the venireperson on account of their group membership. *Id.* The burden then shifts to the offending party to articulate a nondiscriminatory reason related to the particular case to be tried for challenging the juror. *Id.* at 97–98, 106 S.Ct. at 1723–24.[10] The district court's findings regarding purposeful discrimination in the jury selection process are findings which we will not set aside unless clearly erroneous. *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21; *United States v. Power,* 881 F.2d 733, 739 (9th Cir.1989).

■ Here, we cannot say that the district court's inference that De Gross challenged Tiffany on account of his gender was clearly erroneous. The challenged venireperson, Tiffany, is a male. Males are a constitutionally cognizable group. *See Craig v. Boren,* 429 U.S. 190, 197–99, 97 S.Ct. 451, 456–58, 50 L.Ed.2d 397 (1976). De Gross previously exercised seven of her eight peremptory challenges against males. At the time De Gross challenged Tiffany, ten women and two men were seated in the jury box, and only one man remained in the venire. It was not clearly erroneous for the district court to conclude that the foregoing pattern of strikes raised an inference that De Gross acted to exclude Tiffany because of his status as a male.

■ Because the prosecutor established a prime facie case of gender discrimination, the burden shifted to De Gross to justify her challenge of Tiffany on neutral grounds. De Gross failed to carry her burden because she refused to explain her challenge. Thus, the district court properly disallowed De Gross' challenge of Tiffany.

**II.** *Prosecution's Challenge of Tellez*

De Gross also argues that the district court erred in allowing the prosecution's peremptory challenge of Tellez, the only Hispanic on the venire. Based on this single challenge, the district court found that De Gross established a prima facie case of race discrimination. The government takes issue with this finding, arguing that the exclusion of one venireperson cannot establish the "pattern" of challenges against a cognizable group necessary to give rise to an inference of discrimination. *Cf. United States v. Vaccaro,* 816 F.2d 443, 457 (9th Cir.) ("striking just two [black] jurors does not constitute such a pattern indicating a systematic exclusion of blacks"), *cert. denied,* 484 U.S. 914, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987).

■ Although showing a pattern of systematic exclusion is one way of giving rise to an inference of discrimination, it is not the only way. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723 (while "a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination.... These examples are merely illustrative"). There is "no magic number of challenged jurors" which automatically establishes a prima facie case of discrimination. *United States v. Chinchilla,* 874 F.2d 695, 698 (9th Cir.1989). *Batson* clearly directs that "the trial court should consider *all relevant circumstances*" in determining whether a defendant has raised an inference of discrimination. 476 U.S. at 96–97, 106 S.Ct. at 1722–23 (emphasis added); *see also Chinchilla,* 874 F.2d at 698 ("the combination of circumstances taken as a whole must be considered").

■ Here, the jury was charged with deciding whether De Gross, a Hispanic woman, illegally aided and abetted the transportation of undocumented Mexican

---

**10.** *Batson* also required that a defendant who alleges that a prosecutor violated his equal protection rights by discriminatory peremptory strikes to show that he is a member of the same cognizable group as the excluded venireperson. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. How-

ever, when the complaining party relies on the equal protection rights of the venirepersons and the interests of the general public, it is unnecessary for him to show that he is a member of the same cognizable group as the challenged venireperson. *See* footnote 5, *supra,* (citing *Holland* ).

aliens into the United States, an offense that arguably has racial and ethnic overtones. The prosecutor exercised a peremptory challenge against the only Hispanic on the jury. The combination of these relevant circumstances convinces us that De Gross established a prima facie case of racial discrimination. *Cf. id.* at 698 (in a Mexican drug smuggling case, Hispanic defendants established a prime facie case because the prosecutor exercised peremptory challenges against the only Hispanic in the jury pool and the only Hispanic in the alternate pool).

■■■■ After De Gross established a prima facie case of discrimination, the district court properly required the prosecutor to justify his challenge of Tellez on nondiscriminatory grounds. The prosecutor stated that he sought to exclude Tellez primarily because she is a woman and he desired more men on the jury.[11] That statement constituted an admission of purposeful gender discrimination which, under our holding in Section I, violated Tellez's equal protection rights, and also violated De Gross' equal protection rights. *See Batson,* 476 U.S. at 86–87, 106 S.Ct. at 1717–18 (a prosecutor's discriminatory peremptory challenge violates the defendant's right to equal protection of the laws because the defendant is entitled to be tried by a jury chosen pursuant to nondiscriminatory criteria). The district court, therefore, erred in finding that the prosecutor exercised his peremptory challenge on nondiscriminatory grounds.[12]

### CONCLUSION

The district court properly refused to excuse Tiffany when De Gross challenged him because to have done so would have violated Tiffany's constitutional rights. However, the district court's acceptance of the government's challenge of Tellez violat-

---

11. The prosecutor also stated that he felt Tellez might have a language barrier, and that she was "not too bright."

12. We sympathize with the prosecutor's predicament in this case. Faced with a female defendant who was systematically excluding males from the jury, the prosecutor made a reasonable effort to balance the gender composition of the

ed Tellez's and De Gross' constitutional rights. We REVERSE De Gross' conviction and REMAND the case for new trial.

*REVERSED and REMANDED.*

jury. However, under our holding in Section I, we cannot find that the prosecutor's admission constituted a neutral explanation. But the prosecutor may find some solace in the realization that upon retrial De Gross will know that her peremptory challenges will not escape constitutional scrutiny.