*154
 
 Opinion
 

 MARTIN, Acting P. J.
 

 Defendant was charged as follows: counts I and II—inflicting corporal injury on his spouse (Pen. Code, § 273.5, subd. (a))
 
 [1]
 
 and count III—assault with a deadly weapon (§ 245, subd. (a)(1)).
 

 On August 8, 1989, the court allowed the People to amend the information to allege defendant personally used a firearm in the commission of count III (§ 12022.5). On that same date, the court denied defendant’s motion to set aside the information (§ 995).
 

 On October 3, 1989, the court denied defendant’s two motions pursuant to
 
 People
 
 v.
 
 Wheeler
 
 (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], The next day the jury found defendant guilty as charged and found the special allegation to be true.
 

 The court denied defendant probation and sentenced him to state prison for a total term of four years: the three-year middle term on count III, a one-year term for personal use of a firearm, and three-year concurrent sentences on counts I and II. The court imposed a $100 restitution fine (Gov. Code, § 13967), awarded 190 days in custody credits, and notified the Immigration and Naturalization Service of defendant’s conviction and sentencing.
 

 On May 2, 1990, the court responded to the Department of Corrections’ advisement of sentencing error. The court set aside the term imposed on count III, resentenced defendant to the three-year middle term on count III, and added two years for personal use of a firearm. The balance of the sentence remained the same.
 

 Defendant filed a timely notice of appeal.
 

 Facts
 

 The following facts are taken verbatim from appellant’s opening brief as incorporated by reference in respondent’s brief on appeal.
 

 “Ofelia Guerra resided at 2026 High Street, #A,
 
 [sic]
 
 with her three children and Octavio Cervantes, the father of two. . . . Sometimes, Mr. Cervantes stayed overnight with another woman, Sandra, and partially paid her bills. ... On May 25, 1989, 9:00 p.m., they argued and he kicked and struck her. . . . She left. . . .
 

 
 *155
 
 “The next day when she returned, another argument ensued wherein Mr. Cervantes hit and pointed a gun at her. . . .
 

 “Police were called. . . . She sustained cuts. . .
 

 Discussion
 

 Defendant contends the prosecutor improperly used peremptory challenges to systematically exclude White males from his jury.
 

 On October 2, 1989, jury selection commenced in the instant case and the prosecutor exercised several peremptory challenges. The next day the following exchange occurred outside the presence of the prospective jurors:
 

 “Mr. Gonzalez [deputy public defender]: Your Honor, at this point I would like to make a Wheeler Motion. It’s my belief that the prosecutor has engaged in excluding all males from this particular jury. Apparently from what I can tell, he has excluded Mr. Iverson, Mr. Wyatt and I think the third person is Mr. Mullins. I feel all three jurors from their questioning appeared to be either neutral to the defense or the prosecution so I feel the Wheeler [mjotion should be granted in this case and the court should discharge this panel.
 

 “The Court: I don’t have on my record that he has excused Mr. Mullins. Maybe I am mistaken.
 

 “Mr. Gonzalez: I think it was Ken Mattlin.
 

 “The Court: Ken Mattlin?
 

 “Mr. Gonzalez: Yes.
 

 “The Court: All right. Mr. Hough [deputy district attorney] did you want to respond?
 

 “Mr. Hough: Yes, your Honor. People versus Wheeler [and] its progeny deal with the prosecutorial practice of excluding minorities from jury panels. Minorities are defined in case authority. The courts create the categories with which we are concerned, that principal [sic] of law is not statutory. [I]t is—becomes some case authority. Designated minorities insofar as I am aware consist of blacks, hispanics and certain categories of women. I have not to date heard of a category classifying white males as minority. In the
 
 *156
 
 absence of some case authority by counsel indicating that at some point the law has begun to recognize white males as a minority classification, we ask that the motion be denied.
 

 “The Court: All right. Mr. Gonzalez?
 

 “Mr. Gonzalez: Your Honor, my argument is not that white males are a minority, but the nature of this charge is spousal abuse, and basically the difference between my client, a man and the woman in this case, and I think what has happened that the People have excluded men who have—it’s my opinion are members of the male race, and I think that they are being excluded just because they are males, and that is my argument, that that is why they are being systematically excluded from this jury panel.
 

 “Mr. Hough: I deny that I am systematically excusing everyone. I have good reason for every peremptory challenge I have made, but that is no reason to bring a Wheeler Motion. Counsel has to read the rest of the law and find out the groups that pertain to such systematic exclusion before he brings such a motion.
 

 “The Court: With respect to certain exclusion of a particular group of society, Mr. Hough, do you want to indicate your reasons for excluding—for dismissing those individuals?
 

 “Mr. Hough: For the record, I would object [to] being required to do so, your Honor. If the court directs me to do it, I will.
 

 “The Court: Well, I think—I am not granting his motion, but I think for the record it would be beneficial to have that on there.
 

 “Mr. Hough: Very well your Honor. . . . Mr. Iverson, was excluded because he previously sat on a jury involving an assault and battery. I do not know the circumstances of that particular case and that jury was hung.
 

 “The Court: How about number three, there was a Lyle Wyatt, the gentleman with the beard.
 

 “Mr. Hough: Lyle Wyatt has sat on a number of juries, including a driving under the influence, which when they go to jury trial, they involve numerous witnesses and a lot of technical proof. The prosecution usually provides scientific evidence in such a case. I don’t know whether his 1981 civil case involved experts and other such scientific evidence, he has indicated that he sat on a murder trial in 1987 which at a minimum would involve scientific expertise on the cause of death, et cetera. This case may
 
 *157
 
 not involve that. . . . [0]ur proof may not impress him quite as much as the other three trials that he has sat on. There are going to be no experts involved that I am concerned with and I don’t want him to be concerned with a lack of scientific expertise in this matter so that is the reason he was dismissed. Was there a third male?
 

 “The Court: Yes, the one who sat in seat number one.
 

 “Mr. Hough: Mattlin?
 

 “The Court: Mattlin.
 

 “Mr. Hough: I honestly can’t remember why I dismissed Mr. Mattlin, your Honor.
 

 “The Court: All right. Mr. Gonzalez, did you want to respond any further?
 

 “Mr. Gonzalez: Again, your Honor, I will submit that those jurors were excluded merely because they were members of the male race, and my opinion is that it’s the district attorney’s opinion that they may be biased because he is a member of that particular group.
 

 “The Court: The court notes that all of the defendant’s excusáis have been of females thus far in this proceeding. The court will deny your motion, Mr. Gonzalez.
 

 “Mr. Gonzalez: Yes, your Honor.
 

 “The Court: And even if it were, in fact, a certain segment of society which is protected in some way or another for which the prosecutor cannot make a systematic dismissal, the court finds that on the two of them that the prosecutor has stated ... a valid reason for his dismissal of those jurors.”
 

 Later that same day, the following exchange occurred just before the jury was sworn:
 

 “Mr. Gonzalez: Yes, your Honor. At this point I would like to renew my Wheeler Motion. It is my position that the district attorney has excluded all males from this jury. He excused four males. It would appear he excluded those because they are men and they are members of that particular group of sex, and, again, as I point out to the court, this case involves basically my client is a male being accused of some charges by a female. [1] What we have now is basically a jury composed of ten females and two elderly men,
 
 *158
 
 thus I think that these male jurors would be biased with a jury composed of being basically all women and so I think the court should excuse this jury.
 

 “The Court: The court does note that there are two men on this jury, neither of whom were excused by Mr. Hough, and also the court notes that the defendant excused one male from the jury panel. Mr. Hough, did you want to respond?
 

 “Mr. Hough: Only that I would say that I don’t believe white males are of any cognizable group [with which] the Wheeler line of cases deals, [f] I again state that I have good reasons for preempting those individuals that I did preempt, which has nothing to do with their sex, certainly nothing to do with their race, and I just don’t think at this time that counsel can offer any authority for the proposition that Wheeler or its progeny concern, the classification of jurors that he is addressing himself to. . . .
 

 “The Court: All right. For the record, did you want to place on the record the reasons for excluding those that you had excluded?
 

 “Mr. Hough: I can offer some reasons, your Honor, again with an objection for the sake of the record, and who is counsel referring to?
 

 “Mr. Gonzalez: Mr. Mullins . . . Mr. Cicone, Mr. Parks and Mr. Burud. . . .
 

 “Mr. Hough: . . . Okay. Mr. Burud indicated that he was on a civil jury three to four years ago. The standard of proof there is only a mere preponderance of the evidence. Counsel throughout his voir dire never conducted any questioning of this particular juror or any other with respect to the difference between the higher standard of proof we have now, and that much lower standard of proof that was required in Mr. Burud’s last jury trial experience and the only jury trial experience he has mentioned, furthermore, he indicated that he has never, and I underline the word never, ever been the victim of a crime. That was difficult for me to believe. If he is one of those fortunate individuals, he must be the most lucky individual in the world. Those were some of the considerations under my excusing Mr. Burud.
 

 “Mr. Cicone is an attorney, he is a business attorney. During the recess I saw him dictating out in the hall. He obviously brought some work with him to court, and I think that the substance of his answers to the court’s questions would clearly indicate that he was not interested in participating in this trial and that he was throughout trying to get off this panel, and I don’t want a
 
 *159
 
 juror on this panel who is not willing at least to eagerly participate in a decision-making process here and to listen carefully to the testimony of our victim.
 

 “Mr. Mullins’ father has connections at Tehachapi. He is a supervisor of some sort or another up there. They are concerned there with many different types of felonies and there are many different categories of felonies. A lot of them much more serious, at least in the minds of correctional guards who deal with serious offenders, than the case before the bench at this time. That was one of the considerations in my relieving him. [][] Insofar as Mr. Parks is concerned, I don’t honestly recall why I let him go. Thank you your Honor.
 

 “Mr. Gonzalez: Your Honor, just briefly. I would like to point out while there are two males left on the panel that Mr. Hough has exercised all of his ten challenges, but I would also like to point out that two of the people excused had been passed by the district attorney and he agreed, apparently told the court, that he was satisfied with the jury as composed until I removed some of the other subjects and then apparently he decided to take them off.
 

 “Mr. Hough: That’s correct, your Honor. I forgot to emphasize that point. I did pass on these jurors more than once, I believe, and did accept them several times throughout the voir dire. Thank you, counsel.
 

 “The Court: Yes, the court did note that, that you had passed on these jurors previously, and due to the makeup of the jury panel is when you started exercising those challenges. [¶] The court also notes the prosecutor did exercise a challenge against three females on the jury, and which means had he not exercised those three, he could have used those on the remaining two males, I guess it was his choice to do otherwise. The court also finds he stated accurate reasons for denial of the motion, but the court also denies the motion on the grounds ... of failure to state properly grounds for exclusion of this panel based upon a Wheeler motion.”
 

 Defendant contends on appeal:
 

 “Appellant’s rights to a representative cross-section of the community and equal protection of the law guaranteed by California Constitution, article I, sections 7 and 16, and United States Constitution, Sixth and Fourteenth Amendments];,] were thereby violated.
 

 
 *160
 
 “By asking the prosecutor to give reasons for his challenges, the trial court arguably made impliedly the requisite prima facie finding of systematic exclusion, thus shifting the burden to the prosecutor to justify the challenges.
 
 (People
 
 v.
 
 Johnson
 
 [(1989) 47 Cal.3d 1194, 1217];
 
 People
 
 v.
 
 Turner
 
 (1986) 42 Cal.3d 711, 718-719;
 
 People
 
 v.
 
 Gonzalez
 
 [(1989) 211 Cal.App.3d 1186, 1196-1198].)
 

 “However, this Court need not rely upon the notion of implied finding, since the trial court’s legal conclusion that appellant failed to state proper grounds, i.e., the excluded males were not members of a cognizable group, was erroneous. Peremptory challenges may
 
 not
 
 be used to exclude from a jury solely because of a presumed group bias most members of ‘an identifiable group of citizens based on racial, religious, ethnic, or
 
 similar grounds.’ (People
 
 v.
 
 Snow
 
 (1987) 44 Cal.3d 216, 222, emphasis added;
 
 People
 
 v.
 
 Turner
 
 [(1986) 42 Cal.3d 711, 716]; see also
 
 Batson
 
 v.
 
 Kentucky
 
 [(1986)] 476 U.S. 79, 85-86 . . . .)
 

 “Here, the trial judge simply accepted at face value the prosecutor’s denials of group bias, without making a reasoned attempt to evaluate the district attorney’s motives.
 
 (People
 
 v.
 
 Snow, supra,
 
 44 Cal.3d at 226;
 
 People
 
 v.
 
 Turner, supra,
 
 42 Cal.3d at 727-728;
 
 People
 
 v.
 
 Gonzalez, supra,
 
 211 Cal.App.3d at 1202.) Obviously, mere denials of discriminatory motives or general affirmances of good faith were insufficient to meet the prosecution’s burden to rebut defendant’s prima facie case.
 
 (Batson
 
 v.
 
 Kentucky, supra,
 
 476 U.S. at 94, 97-98.)”
 

 Every criminal defendant has a constitutional right to a trial by jury drawn from a representative cross-section of the community. Under the California Constitution, this right is violated when the prosecution exercises its peremptory challenges to remove prospective jurors on the sole ground of group bias. Group bias exists when a party presumes certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds.
 
 (People
 
 v.
 
 Wheeler, supra,
 
 22 Cal.3d 258, 272, 276.) In
 
 Wheeler,
 
 the California Supreme Court held a party exercising a peremptory challenge is presumed to be doing so on a constitutionally permissible ground. However, this presumption is rebuttable. To rebut the presumption of constitutionality, a party who believes peremptory challenges are being exercised on the sole ground of group bias must raise the point in a timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. To meet this burden, the objecting party must (1) make as complete a record of the circumstances as is feasible; (2) establish the excluded persons are members of a cognizable
 
 *161
 
 group; and (3) from all the circumstances of the case show a strong likelihood such persons are being challenged because of their group association rather than because of any specific bias. Once a prima facie case of discrimination has been established, the burden shifts to the opposing party to demonstrate that prospective jurors were not peremptorily challenged on the sole basis of group bias. To meet this burden of justification, the allegedly offending party must satisfy the court he or she exercised such peremptories on grounds that were reasonably relevant to the particular case on trial or its parties or witnesses—i.e., for reasons of specific bias.
 
 (People
 
 v.
 
 Hall
 
 (1989) 208 Cal.App.3d 34, 38-42 [256 Cal.Rptr. 149].) A prima facie showing may be made even though a member of the cognizable group remains on file jury.
 
 (People
 
 v.
 
 Charron
 
 (1987) 193 Cal.App.3d 981, 986 [238 Cal.Rptr. 660].)
 

 If the court finds the burden of justification is not sustained
 
 as to any
 
 of the questioned peremptory challenges, the presumption of their validity is rebutted. Accordingly, the court must then conclude the jury as constituted fails to comply with the representative cross-section requirement and it must dismiss the jurors thus far selected. Upon such a dismissal, a different venire shall be drawn and the jury selection process may begin anew.
 
 (People
 
 v.
 
 McCaskey
 
 (1989) 207 Cal.App.3d 248, 252-253 [254 Cal.Rptr. 742].)
 

 When the prosecution fails to sustain its burden of showing the challenged prospective jurors were not excluded because of group bias or the court fails to discharge its duty to inquire into and carefully evaluate the explanations offered by the prosecutor, the error is prejudicial per se.
 
 (People
 
 v.
 
 Turner
 
 (1986) 42 Cal.3d 711, 728 [230 Cal.Rptr. 656, 726 P.2d 102].)
 

 This court has made the following observation concerning the application of the foregoing principles:
 

 “The prima facie showing requirement is a distinct step which should be treated as such. Twelve potential jurors have been passed ‘for cause’ and peremptory challenges are being exercised. A
 
 ['Wheeler']
 
 objection is made that there is an objectively reasonable basis for believing the other side is improperly excusing jurors. The reasonableness of the belief is the limited issue at this point. The court must determine whether there is a prima facie indication of constitutional abuse. The focus is on the objecting party’s contentions and the record. The burden is upon the objecting party; justifications by the other side are not yet appropriate. If justifications are heard at
 
 *162
 
 this early stage in the process an undoubtedly unintended implication arises that a prima facie showing has been made to the satisfaction of the court.
 

 “Once the court rules a prima facie showing has been made, the ‘peremptory’ attribute of the challenges is lost and the focus turns to justifying the excuses on some acceptable specific basis. No longer is the court ‘screening’ out frivolous objections. Although the court may have second thoughts concerning whether a prima facie showing has been made, it may not return to the screening process. The sole issue then pending is the adequacy of the justifications.”
 
 (People
 
 v.
 
 Granillo
 
 (1987) 197 Cal.App.3d 110, 122 [242 Cal.Rptr. 639].)
 

 A cognizable group exists if its members share a common perspective arising from their life experience in the group and no other members of the community are capable of adequately representing the perspective of the group assertedly excluded.
 
 (People
 
 v.
 
 Gonzalez
 
 (1989) 211 Cal.App.3d 1186, 1199-1200 [259 Cal.Rptr. 870].) In the instant case, the People concede both men and women constitute cognizable groups for purposes of the representative cross-section rule. Therefore, the trial court and the prosecutor erroneously concluded that men do not constitute a cognizable group.
 
 [2]
 
 The People’s concession is grounded on
 
 United States
 
 v.
 
 De Gross
 
 (9th Cir. 1990) 913 F.2d 1417, 1423, rehearing granted en banc, which held “equal protection principles prohibit peremptory challenges exercised on the basis of a venireperson’s gender.”
 
 [3]
 
 (See also
 
 People
 
 v.
 
 Macioce
 
 (1987) 197 Cal.App.3d 262, 280, cert. den. 488 U.S. 908 [102 L.Ed.2d 247, 109 S.Ct. 258] [women constitute a cognizable group];
 
 Craig
 
 v.
 
 Boren (1976)
 
 429 U.S. 190, 204 [50 L.Ed.2d 397, 411, 97 S.Ct. 451] [Oklahoma’s 3.2 percent beer statute invidiously discriminated against males 18-20 years of age].) Moreover, the People acknowledge after the first
 
 Wheeler
 
 motion the trial court made an
 
 *163
 
 implied finding that a prima facie case had been presented. Thus, the People agree the burden shifted to the prosecutor to show his challenges were not predicated on group bias alone.
 

 Despite these concessions, the People contend the trial court satisfied its obligation of inquiry and evaluation of the prosecutor’s explanations for his various peremptory challenges. They argue we should defer to the good judgment of the trial court and accept its finding that the prosecution’s challenges were exercised for reasons of specific bias and not for an improper group or class bias purpose. Appellant responds with a multitude of reasons and conclusions why we should reject respondent’s argument.
 

 We reject both arguments and will reverse the trial court because of the prosecution’s failure to present
 
 any reasons
 
 for the exercise of two peremptory challenges, Mr. Mattlin and Mr. Parks.
 
 (People
 
 v.
 
 Ledesma
 
 (1987) 43 Cal.3d 171, 231 [233 Cal.Rptr. 404, 729 P.2d 839] (conc. opn. of Mosk, J.);
 
 People
 
 v.
 
 Gonzalez, supra,
 
 211 Cal.App.3d at p. 1202;
 
 People
 
 v.
 
 Granillo, supra,
 
 197 Cal.App.3d at p. 123.) In reaching this almost foregone conclusion, we do note several interesting aspects of the
 
 Wheeler
 
 motions, counsel’s respective arguments, and the trial judge’s comments and findings in response thereto in the record below.
 

 We first note each of defense counsel’s
 
 Wheeler
 
 motions was couched in terms of excluding all
 
 males
 
 by the prosecution’s exercise of its peremptory challenges. However, the prosecution responded as if the objection had been to his improper exercise of peremptories to exclude
 
 White males.
 
 The record is silent as to whether or not the excluded men were, in fact, all White males. In view of the United States Supreme Court’s recent decision in
 
 Powers
 
 v.
 
 Ohio, supra,
 
 and the questionable future viability of
 
 United States
 
 v.
 
 De Gross, supra,
 
 this may have been an important distinction below. This is especially true in view of the fact that although still effective and citable,
 
 De Gross
 
 is not binding upon this court.
 

 More importantly, the prosecutor below, as in so many other cases we have reviewed in the last several years, fell into the common trap of responding with specific reasons for exercise of his peremptories in response to the trial court’s request that he do so
 
 without the court making a finding that a prima facie showing of discrimination has been established.
 
 When the prosecutor below first objected to being required to state his reasons, the following transpired:
 

 “The Court: Well, I think—I am not granting his motion, but I think for the record it would be beneficial to have that on there.
 

 
 *164
 
 “Mr. Hough: Very well your Honor. . . .” The district attorney then proceeded to state his specific reasons for exercising peremptories, but finally stated: “I honestly can’t remember why I dismissed Mr. Mattlin, your Honor.”
 

 Later, just before the jury was sworn, defense counsel renewed his
 
 Wheeler
 
 motion, the court listened to the motion and the district attorney’s argument against a prima facie showing, then without making any finding, the following occurred: “The Court: All right. For the record, did you want to place on the record the reasons for excluding those that you had excluded?” The district attorney should have responded “No, not unless the court is making a specific finding, on the record, that defense counsel has made a prima facie showing of discriminatory exercise of my peremptory challenges” or similar words clearly demanding the trial court first state a finding of discriminatory exclusion of prospective jurors on the record. Instead, the district attorney said: “I can offer some reasons, your Honor, again with an objection for the sake of the record . . . .” The district attorney then proceeded to state his specific reasons for exercising some additional peremptories, concluding “Insofar as Mr. Parks is concerned, I don’t honestly recall why I let him go. Thank you, your Honor.”
 

 Essentially the same thing occurred in the district attorney’s response to defendant’s first
 
 Wheeler
 
 motion. Specifically, it appears from this record that after listening to each of defendant’s
 
 Wheeler
 
 motions the trial court concluded that defendant
 
 had not
 
 made a prima facie showing of discriminatory exclusion but failed to make a clear-cut finding to that effect and end the matter right there. Rather, the court invited the district attorney to state specific reasons for exercising his various peremptory challenges. Without demanding a specific finding on the record, the district attorney proceeded to state his reasons, in the course of which he was unable to state any reasons for the exercise of a peremptory as to one challenged prospective juror. And, as the record reflects, the same thing happened twice.
 

 The scenario we have just described could have been avoided had the district attorney demanded a specific finding of the trial judge. Although not an excuse, we understand that trial lawyers, including deputy district attorneys, often are reluctant to make demands of the trial judge for such things as specific findings, etc. However, at least as to
 
 Wheeler
 
 motions, the district attorney need never be put in this position. When defense counsel makes a
 
 Wheeler
 
 motion and states his reasons for the motion, if the trial judge, after weighing and evaluating these reasons, concludes a prima facie showing of discriminatory exclusion of a cognizable group has not been made, then the judge must clearly and succinctly say so, state his or her reasons, and make
 
 *165
 
 the necessary finding of no prima facie showing. On the other hand, if the court concludes a prima facie showing has been made, then it must state that finding. Either way, the district attorney knows where he or she stands and what must be done, i.e., either respond or not, depending on the court’s specific finding. And, of course, had the above-described scenario been followed here, then
 
 Wheeler
 
 error may have been avoided.
 
 [4]
 

 The judgment is reversed and the case is remanded to the trial court for new trial.
 

 Stone (W. A.), J., and Buckley, J., concurred.
 

 [1]
 

 All statutory references are to the Penal Code unless otherwise indicated.
 

 [2]
 

 With respect to the race of the excluded jurors, the United States Supreme Court recently held a criminal defendant may object to
 
 race-based exclusions
 
 of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race. The equal protection clause prohibits a prosecutor from using the state’s peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life.
 
 (Powers
 
 v.
 
 Ohio
 
 (1991) 499 U.S. _, _ [113 L.Ed.2d 411, 419-425, 111 S.Ct. 1364, 1366-1370].) In
 
 People
 
 v.
 
 Johnson, supra,
 
 47 Cal.3d 1194, 1219, footnote 5, the California Supreme Court noted
 
 Wheeler
 
 allows a criminal defendant to challenge the exclusion of groups of which he is not a member.
 

 [3]
 

 On April 4, 1991, the United States Court of Appeals for the Ninth Circuit ordered the case be reheard by the en banc court.
 
 (United States
 
 v.
 
 De Gross
 
 (9th Cir. 1991) 930 F.2d 695.) When the court votes to rehear a matter en banc, the opinion of the three-judge panel remains in effect pending decision on the rehearing unless the order in addition provides the opinion is withdrawn. (See Cir. Advisory Com. Note (5) to 9th Cir. Rules 35-1 to 35-3 [West’s Cal. Rules of Court Federal (1991 desk copy) p. 44].) The en banc order in
 
 De Gross
 
 did not expressly direct withdrawal of the opinion and therefore it remains in
 
 effect
 

 [4]
 

 As the California Supreme Court has recently noted:
 

 “In determining whether to infer a trial court’s finding of a prima facie case under Wheeler, we look to the whole record, examining the court’s remarks in context. Certainly we will not infer such a finding when . . . the trial court has expressly found that the defense has failed to make a prima facie case. But when nothing in the record suggests the contrary, a trial court’s statement requesting the prosecution to explain its challenges or to comment on the defendant’s motion will be construed as a finding of a prima facie case. We again urge trial courts to make express findings on the existence of a prima facie case, so that reviewing courts need not determine this important question on the basis of implication.
 
 (People
 
 v.
 
 Turner, supra,
 
 42 Cal.3d 711, 719, fn. 3.)”
 
 {People
 
 v.
 
 Hayes
 
 (1990) 52 Cal.3d 577, 605, fn. 2 [276 Cal.Rptr. 874, 802 P.2d 376].)