UNITED STATES of America,
Plaintiff–Appellee,

v.

Rafael CHINCHILLA and Carlos Alberto Escobar, Defendants–Appellants.

Nos. 87–5102, 5112.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1987.

Decided May 11, 1989.

Cynthia G. Aaron, Charles D. Weisselberg, Trial Attorney, Federal Defenders of San Diego, Inc., Maxine I. Dobro, San Diego, Cal., for defendants-appellants.

William D. Baldwin, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before O'SCANNLAIN and LEAVY, Circuit Judges, and WILLIAMS,* District Judge.

SPENCER WILLIAMS, District Judge:

Chinchilla and Escobar appeal their conviction for crimes related to the importation and possession of marijuana. Their principal attack alleges discriminatory use of peremptory challenges in jury selection. We agree and reverse.

### FACTS AND PROCEEDINGS

On November 1, 1986, Arnoldo Fuentes drove a van containing marijuana across the Mexico–United States border. After crossing the border, authorities found the marijuana and arrested Fuentes.

Fuentes told agents that Chinchilla had (1) paid him $150 to drive the van from Tijuana, Mexico to Los Angeles; (2) introduced him to Escobar, who then drove Fuentes to San Ysidro, California, a city adjacent to the border; and (3) given Fuentes a number to call if he needed additional help.

Fuentes then helped the authorities by drawing Chinchilla and Escobar into incriminating tape-recorded conversations. Shortly after his arrest, Fuentes called Chinchilla and told him the van had broken down in San Ysidro and that he smelled marijuana in the van. Chinchilla said he would send Escobar to help bring the van back. Chinchilla also said he would now pay Fuentes $4,000 to $5,000 to bring the van back.

---

* The Honorable Spencer Williams, United States District Judge for the Northern District of California, sitting by designation.

Several hours later, Escobar arrived. Escobar told Fuentes that Chinchilla had told him before he left on this second trip to the border that twenty pounds of marijuana were in the van. Soon after Escobar's arrival, the authorities arrested him. After Escobar was arrested, Fuentes called Chinchilla again. He told Chinchilla that the van had broken down again. Chinchilla agreed to meet Fuentes. When Chinchilla arrived, the authorities arrested him.

The government charged Chinchilla and Escobar on various counts relating to the importation, possession, and distribution of marijuana.

On February 24, 1987 jury selection began for a joint trial of Chinchilla and Escobar. The government used its first peremptory challenge to strike the only Hispanic on the jury panel. The government also used its only challenge to the alternate pool to strike the sole Hispanic in that group.[1]

When the defendants objected, the prosecutor responded that he removed the Hispanic jury member based on where the juror lived and his type of employment. The prosecutor stated that he challenged the Hispanic alternate juror because of his age and how he appeared in court. The court rejected the defense's objection, finding that the government's explanation was satisfactory.

The jury convicted Chinchilla and Escobar on all counts. Both filed timely appeals.

## DISCUSSION

Chinchilla and Escobar contend that the government's exercise of peremptory challenges to remove the only Hispanic juror and the only Hispanic alternate juror deprived them of due process. We agree and reverse.[2]

1. As it turned out, the alternate selected actually sat in deciding the case.

2. Because we reverse on the jury selection issue, we do not reach the other claims raised by Chinchilla and Escobar involving the instruction on importation, sufficiency of the evidence, Escobar's competency to stand trial, and the exclusion of certain testimony as hearsay.

■ To establish a claim of discriminatory selection of jurors, a defendant must first establish a prima facie case of purposeful discrimination. *See Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986). A defendant must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the jury members of the defendant's race. *Id.; United States v. Thompson*, 827 F.2d 1254, 1256–57 (9th Cir.1987). Then, the defendant must demonstrate that these facts and any other relevant circumstances raise an inference that the prosecutor used the challenge to exclude such jurors on account of race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722.[3]

■ Once the defendant makes a prima facie showing, the burden shifts to the government to articulate an explanation for challenging such jurors. *Id.* at 97, 106 S.Ct. at 1723; *United States v. Alcantar*, 832 F.2d 1175, 1179 (9th Cir.1987). To avoid a finding of purposeful discrimination, the prosecutor must articulate a neutral explanation related to the particular case tried. *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723. This explanation cannot be a general assertion that denies a discriminatory motive or claims good faith in individual selections; however, the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. *Id.* at 97–98, 106 S.Ct. at 1723–24.

The trial court then determines if the defendant has established purposeful discrimination. *Id.* at 98, 106 S.Ct. at 1723. Since the district court's determination of whether a peremptory challenge constituted purposeful discrimination turns on an evaluation of credibility of the prosecutor's explanation, we should give those findings

3. While establishing a prima facie case, the defendant may rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722.

great deference. *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21; *accord United States v. Williams,* 822 F.2d 512, 515 (5th Cir.1987) (court of appeals gives district court's findings of no discrimination great deference); *United States v. Cloyd,* 819 F.2d 836, 837–38 (8th Cir.1987) (court of appeals gives great deference to district court's determination that prima facie case of discrimination had been rebutted).

Chinchilla and Escobar are Hispanics and, therefore, are members of a cognizable racial group. Both the juror and the alternate juror removed by the prosecutor were Hispanics. It is important to emphasize that the challenge of two minority jurors does not, in and of itself, create a prima facie case of purposeful discrimination. There is no magic number of challenged jurors which shifts the burden to the government to provide a neutral explanation for its actions. Rather, the combination of circumstances taken as a whole must be considered.

■ In this case the prosecutor (1) challenged all Hispanic jurors[4]; (2) used his first peremptory challenge to strike the only Hispanic juror; and (3) exercised his sole challenge to the alternate pool to remove the only other Hispanic in the jury pool.[5] Chinchilla and Escobar have offered

sufficient facts and circumstances to raise an inference that the prosecutor used the challenges to exclude jurors on account of race. Accordingly, we find that Chinchilla and Escobar made out a prima facie case of discrimination.

■ In addition, although this court gives great deference to the district judge's conclusion that Chinchilla and Escobar failed to establish the purposeful exclusion of Hispanic jurors, *see Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, this court finds that the government's explanation in this case was not sufficiently "clear and reasonably specific." *Id.* at 98 n. 20, 106 S.Ct. at 1723 n. 20.

The prosecutor in this case explained that the purported bases for the challenges were type of employment, age, and residence. The government stated that it rejected juror Osuna due to his residence (La Mesa) and his employment (restaurant manager). However, another unchallenged juror lived in La Mesa. Furthermore, the prosecutor claimed that he struck the alternate juror Vasquez because of his age and his appearance in court, yet the jurors did not state their ages for the record, and this court has no other evidence of the prospective alternate's age.

---

4. The fact that *all* the Hispanic jurors were challenged is significant though not required for a prima facie case to exist. For example, in *Thompson,* 827 F.2d at 1256–57, a prima facie case existed where the prosecutor used four peremptory challenges to exclude all four blacks in the jury pool. Similarly, in *Alcantar,* 832 F.2d at 1177, a prima facie case existed where the prosecutor challenged all three Hispanics in the jury pool. *But see United States v. Battle,* 836 F.2d 1084, 1085–86 (8th Cir.1987) (government's use of five of its six (83%) allowable peremptory challenges to strike five of the seven (71%) blacks from the jury panel sufficient to establish a prima facie case).

However, the willingness of a prosecutor to accept minority jurors weighs against the findings of a prima facie case. *See United States v. Montgomery,* 819 F.2d 847, 851 (8th Cir.1987) (no prima facie case where the government (1) accepted a jury which included two blacks; (2) could have used its remaining peremptory challenges to strike these remaining blacks; and (3) did not attempt to exclude all blacks, (or as many blacks as it could); *accord United States v. Ratcliff,* 806 F.2d 1253, 1256 (5th Cir.1986)

(although one black struck, two blacks remained on jury), *cert. denied,* 481 U.S. 1004, 107 S.Ct. 1625, 95 L.Ed.2d 199 (1987); *United States v. Dennis,* 804 F.2d 1208, 1210–11 (11th Cir. 1986) (three blacks excluded, but two blacks remained on jury), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987).

5. It is true that a prosecutor with non-discriminatory motives who has struck the only minority prospective juror will be in an awkward situation when faced with a minority alternate that he or she may want to strike as well. However, although the striking of one or two members of the same racial group may not always constitute a prima facie case, it is preferable for the court to err on the side of the defendant's rights to a fair and impartial jury. It might be advisable for the court and counsel to have a pre-selection *in camera* discussion in which the cognizable racial group is identified. Then during the course of jury selection, counsel could ask for a recess and explain *in advance* the reasons for an intended peremptory challenge of a member of that group. The judge could pass on the sufficiency of the reason at that time.

Thus, the court is left with only two acceptable bases for the challenges: poor appearance for the alternate and choice of employment for the potential juror. Although these criteria would normally be adequately "neutral" explanations taken at face value, the fact that two of the four proffered reasons do not hold up under judicial scrutiny militates against their sufficiency. *See, e.g., People v. Hall,* 35 Cal. 3d 161, 168, 672 P.2d 854, 858, 197 Cal. Rptr. 71, 75–76 (1983) (prosecutor's explanation that he struck black jurors because of their connection with state in which defendant previously resided, when white juror from same city as defendant was left unchallenged, was inadequate because "[s]uch disparate treatment is strongly suggestive of bias, and could in itself have warranted the conclusion that the prosecutor was exercising peremptory challenges for impermissible reasons").

Thus, we hold that appellants Chinchilla and Escobar have established a prima facie case of purposeful discrimination and that the prosecutor did not present an adequate explanation for his use of peremptory challenges to strike all the Hispanic jurors. Therefore, appellants' convictions are REVERSED.

O'SCANNLAIN, Circuit Judge, dissenting:

I agree that a *prima facie* case of discrimination was made out. I agree that *Batson v. Kentucky,* 476 U.S. 79, 98 n. 21, 106 S.Ct. 1712, 1724 n. 21, 90 L.Ed.2d 69 (1986) requires us to give "great deference" to the trial court judge's determination whether the defendant has established purposeful discrimination in the jury selection context.

For those very reasons, however, I would affirm Judge Thompson's ruling of no purposeful exclusion because of his better opportunity to gauge the credibility of the government's explanation. Although one of the bases for challenge enunciated by the government—the place of residence of juror Osuna—was inadequate because an unchallenged juror resided in the same location, three other possible legitimate grounds remain—the age and appearance of the alternate juror and the occupation of juror Osuna. In its valuation of these latter three stated reasons for the government's challenges, the trial court found no evidence of systematic exlusion of hispanic jurors and was satisfied with the government's explanation. Summary though it might be, such finding should have been accorded the "great deference" required by *Batson.*