1 F.3d 1247
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Ismael ENCISO, Defendant/Appellant.
 No. 92-50606.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 16, 1993.*
Decided July 30, 1993.
 
 Before GIBSON,** HALL and KLEINFELD, Circuit Judges.
 
 
 1
 Ismael Enciso appeals his conviction and sentence for importing, and possessing with intent to distribute, marijuana. We affirm.
 
 I. FACTS
 
 2
 At approximately 10:30 p.m. on February 18, 1992, Enciso drove a 1984 Chevrolet pick-up truck to the San Ysidro Port of Entry. He told the inspector the truck belonged to his uncle and that he was going to Chula Vista, California, to fill the truck with gasoline. For a variety of reasons not germane to this case, the inspector's suspicions were aroused, so he escorted Enciso and the truck to a secondary inspection. At this inspection, a dog trained to detect the odor of narcotics was used. Initially, the dog failed to alert its trainer that it detected the smell of drugs; however, it did so after some air was let out of one of the tires.
 
 
 3
 The truck was then taken to the Border Patrol Office so the tires could be removed. While the truck was being driven to the office, the truck shook, rattled, and swayed to such a degree that the agents driving and riding in the truck suspected something was wrong with the tires. One of the agents testified at trial that, based on his experience, he could tell the tires contained contraband. Once the tires were removed and examined, the agents discovered twenty-six packages of marijuana, weighing a total of 119 pounds, inside the tires.
 
 
 4
 While the truck's tires were being removed and inspected, Enciso remained at the secondary checkpoint. At some point, he was placed under arrest and searched. In his wallet, agents discovered the truck's title (which did not have Enciso's name on it), a document permitting the truck's importation into Mexico ("the permit"), and a receipt for the purchase of the truck made out to Enciso.
 
 
 5
 All of the above information was presented as evidence at trial. Additionally, Enciso's twin brother testified his brother had shown him the permit at least 2 1/2 weeks prior to Enciso's arrest. He also testified that he did not have an uncle who owned a 1984 Chevrolet truck, that he had never seen or ridden in the truck, and that his brother did not own a vehicle but was in the process of buying one. Enciso also called an auto mechanic to the stand; he testified that many factors could cause a truck to perform in the manner described by the agents, and that a lay person would not automatically suspect the problem was caused by the presence of foreign matter in the tires.[1]
 
 
 6
 Before the jury was sworn, and at intermittent points throughout the trial, Enciso raised and argued a Batson[2] challenge to the government's exercise of its peremptory strikes. The government used one of its six strikes to remove a black female, leaving one black female on the panel. The government exercised its sole strike for the alternate pool to remove the only black member. The court noted there was "no problem" with removing the juror because "her mother was falsely accused of a crime." With regard to the alternate juror, the court asked the prosecutor to give an explanation, but she initially declined to do so, believing Enciso had failed to make out a prima facie case of discrimination. When pressed, the prosecutor said her motive was "that we preferred another alternate. Her race was not a factor ... and that's clear from our having kept on [other minorities]." Later, the court noted that all three potential alternates were members of three different minority groups, which meant the government's use of its strike in the alternate pool was inevitably going to remove a minority.
 
 
 7
 At sentencing, Enciso requested that the court depart below the minimum sentence prescribed by the Sentencing Guidelines because, inter alia, 1) Enciso was nothing more than a "mule", and 2) Enciso's crime involved a "single aberrant act." The court declined both invitations.
 
 
 8
 Enciso appeals, alleging that 1) there was insufficient evidence to support the conviction, 2) the district court's Batson inquiry was improper, and 3) the court improperly declined to grant a downward departure.
 
 II. DISCUSSION
 A. Sufficiency of the Evidence
 
 9
 "In reviewing the sufficiency of the evidence, we determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt." United States v. Soto, 779 F.2d 558, 560 (9th Cir.1986), cert. denied, 484 U.S. 833 (1987). Under this standard, we determine "whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." Id. In this case, a reasonable jury could have concluded the truck belonged to him (despite his claims to the contrary) because he possessed a receipt reflecting he had purchased it. The jury could have also concluded Enciso's journey was for the purpose of delivering the marijuana, and not for the innocent purpose he claimed, because 1) the truck did not belong to his uncle, as he claimed, 2) his venture to Chula Vista to get gasoline took him past at least one town where he could accomplish this task, and 3) it was obvious that there was something wrong with the truck's tires. Enciso relies on a variety of cases in which there was insufficient evidence to support the conviction, but these cases are distinguishable in one important respect: the defendants were present at the scene or in the vehicle in which drugs were found, but there was no proof they had control over the premises or owned the vehicles in question. E.g., United States v. Sanchez-Mata, 925 F.2d 1166, 1169 (9th Cir.1991) ("Sanchez-Mata did not have a key to the trunk or car, was not driving the car, did not own the car."). Because there was evidence that Enciso owned this truck, this is not a case where "the evidence suggested that a defendant was merely caught in 'extremely incriminating circumstances,' United States v. Ramirez, 880 F.2d 236, 238 (9th Cir.1989), resulting from his proximity to drugs possessed by other people." United States v. Vasquez-Chan, 978 F.2d 546, 551 (9th Cir.1992).
 
 B. The Batson Challenge
 
 10
 Batson v. Kentucky prohibits prosecutors from exercising their peremptory challenges solely on account of the race of the prospective jurors. 476 U.S. at 89. Defendants may raise a Batson challenge even if they do not belong to the same racial group that was allegedly struck by the prosecutor. Powers v. Ohio, 111 S.Ct. 1364, 1373-74 (1991).
 
 
 11
 "Batson describes a three-part analysis to determine whether the prosecutor's peremptory strike violates the Constitution." United States v. Bishop, 959 F.2d 820, 824 (9th Cir.1992). The defendant must first establish a prima facie case of discrimination. If he succeeds in this task, the prosecutor must offer race-neutral grounds for the strikes. "Finally, it is up to the trial court to 'determine if the defendant has established purposeful discrimination.' " Id. (quoting Batson, 476 U.S. at 98).
 
 
 12
 With regard to the jury pool, we do not think a prima facie case of discrimination was present. "[T]he challenge of two minority jurors does not, in and of itself, create a prima facie case of purposeful discrimination," United States v. Chinchilla, 874 F.2d 695, 698 (9th Cir.1989), and in this case, the government struck only one of the two minority jurors. In considering the other circumstances surrounding the voir dire (as permitted by Batson, see 476 U.S. at 97), we are mindful of the district court's observation that the prospective juror's mother was falsely accused of a crime.[3] These factors persuade us that no prima facie case of discrimination was established.
 
 
 13
 We must express concern over the government's explanations for its strike in the alternate pool. The prosecutor's insistence that "[t]he race was not a factor" is plainly inadequate, see Chinchilla, 874 F.2d at 697, and its explanation that "we preferred another alternate" is a truism that hardly qualifies as an explanation. Similarly, the prosecutor's attempt to defend her actions by pointing out the minorities struck by the defense--a tactic employed both in this court and the district court--is of no legal effect. The proper course is for the prosecutor to object to the defense counsel's race-based strikes, which was permitted at the time of this trial pursuant to United States v. DeGross, 960 F.2d 1433, 1439-42 (9th Cir.1992) (en banc) (applying Batson to defense counsel's peremptory challenges). Having failed to make this objection, the prosecutor cannot shield itself from claims of wrongdoing by asserting the defense committed the same wrong. We are reminded of a familiar adage: two wrongs don't make a right.
 
 
 14
 In spite of these misgivings, we affirm the district court because it correctly concluded Enciso failed to establish a prima facie case of discrimination with respect to the alternate pool.[4] The district court observed that all three members of the alternate pool were members of a minority group. Regardless of which individual the government chose to eliminate, it would inevitably remove a minority from the alternate pool. Without more, the government's exercise of its strike in these circumstances does not present a prima facie case of discrimination.
 
 C. Sentencing
 
 15
 Enciso appeals the district court's refusal to depart below the minimum sentence required by the Sentencing Guidelines based on our decisions in United States v. Valdez-Gonzalez, 957 F.2d 643 (9th Cir.1992), United States v. Takai, 941 F.2d 738 (9th Cir.1991), and United States v. Morales, 972 F.2d 1007 (9th Cir.1992), cert. denied, 113 S.Ct. 1665 (1993). It is not necessary for us to discuss the holdings of these cases in great detail; the relevant point is that these cases describe circumstances in which a district court may exercise its discretion and depart below the Guidelines.
 
 
 16
 We have previously held, and Enciso concedes, that we lack jurisdiction to review a district court's decision to not exercise its discretion to grant a downward departure. United States v. Morales, 898 F.2d 99, 102 (9th Cir.1990). Enciso attempts to avoid the impact of this rule by couching his claim as one involving the district court's refusal to follow the law of the circuit. We have reviewed the sentencing transcript, and concede the court expressed some disagreement with the decisions upon which Enciso relied. Nonetheless, the court clearly understood it had the power to depart (assuming the necessary facts were present) but was clearly not inclined to do so. Inasmuch as we do not review cases in which "the court indicated that it would not depart had it the authority to do so," United States v. Brown, 985 F.2d 478, 480 (9th Cir.1993), we find no basis upon which we can review this case. Even if Enciso's situation perfectly mirrored that of the defendants in the cases upon which he relies, the decision to depart would be discretionary, and the refusal to depart would be unreviewable.
 
 III. CONCLUSION
 
 17
 For the above-stated reasons, Enciso's conviction and sentence are AFFIRMED.
 
 
 
 *
 This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Floyd R. Gibson, Senior Circuit Judge, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Enciso's defense was that he was not aware there was contraband in the tires, and that he should not have suspected there was contraband in the tires simply because of the manner in which the truck rode
 
 
 [2]
 Batson v. Kentucky, 476 U.S. 79 (1986)
 
 
 [3]
 Enciso contends the district court improperly assumed this fact was the prosecutor's justification for the strike. We disagree. Information discovered during voir dire may be considered when determining whether a prima facia case of discrimination has been established. We believe the court was making clear that it doubted a prima facie case could be made in light of the particular situation of the sole black juror that was eliminated. There was no impropriety in the court's actions
 
 
 [4]
 "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez v. New York, 111 S.Ct. 1859, 1866 (1991). However, in this case, we are reviewing whether the defendant made prima facia showing of discrimination because the prosecutor's explanations were inadequate under Batson and, more importantly, because the district court did not rule on the "ultimate question of intentional discrimination," but instead explicitly stated that it did not believe a prima facia case had been made