**Philip SENEGAL, Petitioner,**

v.

**Theo WHITE, Respondent.**

**No. C–93–1269–CAL.**

United States District Court, N.D. California.

March 8, 1995.

Philip Senegal, pro se.

Frances Marie Dogan, Deputy Atty. Gen., State of California, San Francisco, CA, for respondent.

### ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

LEGGE, District Judge.

Petitioner Philip Senegal is a prisoner of the State of California. He was convicted by a state court jury of one count of murder and one count of attempted murder, and was sentenced to state prison. In this petition for a writ of *habeas corpus*, he alleges several grounds of constitutional error.

### I.

Petitioner and his codefendant William Chaney were charged with the murder of Robert Hockenhull and the attempted murder of Sidney Bender. The prosecution's theory on both charges was that petitioner was a coconspirator because he guarded or blocked the victims' escape route and fired one shot, although he hit no one. The defendants were tried together, and a jury found both of them guilty of first degree murder and attempted murder. Petitioner was sentenced to state prison for a term of nine years, plus a consecutive indeterminate sentence of twenty-five years to life.

Petitioner appealed his conviction to the California Court of Appeal, which affirmed his conviction in an unpublished opinion. His petition for a hearing by the California Supreme Court was denied. It is apparent from the state appellate record that the claims which petitioner raises in this case were presented to those state appellate courts, and petitioner has therefore exhausted his state remedies.

### II.

After petitioner filed his petition in this court, the court issued an order to show cause. An attorney was appointed to represent petitioner. The petition was answered by the state, which also supplied the very voluminous state court records. Petitioner filed a reply to the state's answer. This court then requested further briefing on the issue of the standard for this court's review of the state trial court's decision regarding petitioner's claim of race discrimination in the selection of his jury. That further briefing was supplied, and the petition was submitted for decision.

This court has reviewed the record, including the state court record, the arguments of counsel, and the applicable authorities. This court determines that the claims made in this petition can be resolved by reference to the state court record, and that no evidentiary hearing is necessary.

There are three claims asserted by petitioner. The first is a claim that the prosecutor violated the constitutional prohibition against the improper exercise of peremptory challenges based on race. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Petitioner also claims that he was convicted on the basis of improper hearsay evidence. He also contends that the jury was improperly instructed.[1]

Federal *habeas corpus* relief is not generally available to address errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990). In *habeas* review this court must decide wheth-

---

1. In this court's order to show cause of July 29, 1993, the court defined the claims, somewhat differently. However, that was based on peti-

tioner's *pro se* filing. The subsequent briefing has identified the claims as being the three stated here.

er the conviction violated the constitution or laws of the United States. *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Therefore, although the parties argue about whether the above alleged errors violated California law, this court addresses whether the alleged errors present a federal constitutional violation.

## III.

Petitioner's first claim is that the prosecutor used three of his first six peremptory challenges to disqualify black[2] jurors, in violation of defendant's rights under *Batson v. Kentucky,* above. The trial record indicates that petitioner, his codefendant, the victims, and the percipient witnesses were black and knew one another. The defendants, victims and some of the witnesses were involved in the sales of drugs.

## A.

■ The purposeful exclusion of black persons from participation in juries violates the Equal Protection Clause of the Constitution. *Swain v. Alabama,* 380 U.S. 202, 203–204, 85 S.Ct. 824, 826–27, 13 L.Ed.2d 759 (1965). In *Batson v. Kentucky,* the United States Supreme Court held that the Equal Protection Clause prevents the state from using peremptory challenges to strike jurors solely on the basis of their race, or on the assumption that jurors of the same race as the defendants will be unable to render an impartial decision. 476 U.S. at 89, 106 S.Ct. at 1719.

*Batson* held that a defendant may make a *prima facie* showing of the purposeful exclusion of jurors "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id.* at 94, 106 S.Ct. at 1721–22. The Court in *Batson* held that a defendant may meet his burden by showing that: he is a member of a racial group capable of being singled out for different treatment; the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race; peremptory challenges are a jury selection practice that permits discrimination; those facts

and other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude persons from the jury on account of their race. *Id.* at 96, 106 S.Ct. at 1722–23. Circumstantial evidence may include a pattern of strikes against black jurors. *Id.* at 97, 106 S.Ct. at 1723.

## B.

The jury venire consisted of forty persons, seven of whom were black. As stated, the prosecutor used three of his first six peremptory challenges to disqualify black jurors. Defendant does not allege that there was a *pattern* of improper strikes. The pattern in this case was black, white, black, white, white, black, pass, pass.

Petitioner's codefendant then moved to strike the entire jury on the ground that the prosecutor was excusing jurors on the basis of their race. Petitioner joined in the motion.

The trial court then asked the prosecutor if he had any argument as to whether the defendants had made a *prima facie* showing of wrongful exclusion. The prosecutor noted that there were four black persons remaining on the jury and that he had passed peremptory challenges twice with those persons on the jury. The prosecutor also began to explain his reasons for striking the three black jurors but stated no more than "Ms. Howard indicated she doesn't....," before the trial judge stopped him. The judge said, "There also appear to be four individuals in the panel, in the audience who may be called, and I have also considered that. I don't think you [defendants] made out the *prima facie* case yet. I am sensitive to it, though. We'll continue to monitor this. The motion is denied." Ultimately, three black persons served on the jury which convicted petitioner.

## C.

■ The first issue is the standard of this court's review. Petitioner contends that the

---

**2.** The court uses the term "black" in this order, rather than "African–American," because that

was the terminology used in the trial record.

state trial court in essence made a ruling of law, which is reviewable by this court *de novo*. The state contends that the decision was one of fact, and that this court must therefore extend deference to the state judge's decision. 28 U.S.C. § 2254(d) requires federal courts to presume the correctness of state court factual findings. *Kuhlmann v. Wilson*, 477 U.S. 436, 441, 106 S.Ct. 2616, 2620, 91 L.Ed.2d 364 (1986). Such fact findings will not be set aside unless they lack fair support in the record. *McKenzie v. Risley*, 842 F.2d 1525, 1531 (9th Cir.) (en banc), *cert. denied*, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988).

The trial judge decided that petitioner had not made a *prima facie* case. And he therefore did not reach the point of asking the prosecutor to give a neutral explanation for challenging the black jurors, which would be the next step in the *Batson* analysis. If the trial judge had heard the prosecutor's justification, and then made a determination as to whether that justification rebutted the inference of discrimination raised by a *prima facie* case, the court's conclusion would have been a determination of fact. *See Palmer v. Estelle*, 985 F.2d 456, 458–9 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 3051, 125 L.Ed.2d 735 (1993); *United States v. Chinchilla*, 874 F.2d 695, 697–8 (9th Cir.1989). But the state trial judge did not reach that point.

■ Was his finding of the absence of a *prima facie* case a determination of fact reviewable by this court only with great deference, or a finding of law which is to be reviewed *de novo*? After analyzing the following authorities, this court concludes that it should apply the deferential standard of review to the state court's decision that petitioner had not established a *prima facie* case.

Petitioner cites two cases which allegedly hold that the determination of a *prima facie* case is a conclusion of law; however, neither is exactly on point. *See Pemberthy v. Beyer*, 800 F.Supp. 144, 151 (D.N.J.1992) (holding that trial court did not apply *Batson* standard and therefore there was no factual finding to which to defer), *reversed*, 19 F.3d 857 (3d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 439, 130 L.Ed.2d 350 (1994); *Jones v.*

*Jones*, 938 F.2d 838, 842–43 (8th Cir.1991) (holding that because trial court did not set forth an indication of a finding there was no factual finding to which to defer). The state cites a case holding that a trial court's ruling on whether a defendant had made a *prima facie Batson* case should be reviewed as a finding of fact, because it is based in part on such information as the jurors' general demeanor, alertness, and disposition toward the defendant. *See United States v. Moore*, 895 F.2d 484, 485–86 (8th Cir.1990).

Research has not disclosed any cases from this circuit in this procedural posture; that is, where the defendant challenged the propriety of the peremptory challenges, but the state trial court held there was no *prima facie* showing. However, there is a Ninth Circuit case reviewing a *federal* trial court's application of the *Batson* requirements: *United States v. Vasquez–Lopez*, 22 F.3d 900 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994). There does not appear to be any reason to apply a different standard in this review of a state court's *Batson* finding. *See Jones v. Jones*, 938 F.2d at 841–42.

In *Vasquez–Lopez*, the Ninth Circuit reviewed the decision of a district court that a defendant had failed to make a *prima facie* case of purposeful discrimination under *Batson*. The prosecutor had used a peremptory challenge to remove the only black juror on the panel. The defendant argued that there was no reason to believe that the challenged juror would be an unqualified or biased juror. The government began to offer an explanation for the challenge—the prosecutor's perception that the juror was inattentive and not interested in being a juror—when the judge told *defense* counsel to explain what facts supported an inference of intentional discrimination. In other words, the court asked defendant to state his *prima facie* case. Defendant's counsel stated that the juror was the only black juror, lived in the South Central Los Angeles as did the defendant, and did not answer the voir dire questions in a way that showed she should not be a juror. The district court found no *prima facie* case.

On appeal, the Ninth Circuit held that "[a] district court's findings regarding purposeful

discrimination in the jury selection process will not be disturbed unless *clearly erroneous.*" *Id.* at 901 (emphasis added). The court explained:

> Using peremptory challenges to strike Blacks does not end the inquiry; it is not per se unconstitutional, without more, to strike one or more Blacks from the jury. A district court must consider the relevant circumstances surrounding a peremptory challenge.

*Id.* at 902 (citation omitted). The court further explained:

> We give broad deference to district court judges, who observe the *voir dire* first hand. Nothing in the record supports a conclusion that the district judge committed clear error when he held that Vasquez–Lopez had failed to establish a prima facie case. The judge appropriately considered the impact of the government's challenge on the composition of the jury. There were other factors. The prosecutor's questions and statements during the selection of the jury failed to support an inference of purposeful discrimination. The government's other peremptory challenges did not suggest a general pattern of discrimination against racial minorities. The challenged prospective juror was not treated differently than other prospective jurors who were similar in relevant aspects except race. The one fact supporting Vasquez–Lopez's *Batson* claim was the juror's status as the sole Black prospective juror. More was required.

*Id.* (citations omitted).

The 9th Circuit's opinion in *Vasquez–Lopez* indicates that a deferential standard should be applied here, rather than a *de novo* review, as to whether petitioner made a *prima facie* showing.

### D.

Under that standard of review, this court then returns to the record of the jury selection and the exercise of the peremptory challenges in this case. As stated, petitioner, his codefendant, the victims, and the percipient witnesses were black. The *venire* included forty persons, seven of whom were black. In exercising his peremptory challenges, the prosecutor exercised three of his challenges against black jurors. They were done in the following order: black, white, black, white, white, and black. The prosecutor then passed two opportunities to exercise additional peremptory challenges. The record discloses the following *voir dire* information regarding the black jurors who were excused by the prosecution:

The prosecutor used his first peremptory challenge to excuse Ms. Howard. Ms. Howard had served as an alternate juror three years previously in a moving violation case. She had not heard or read about any of the facts of this case. She had no friends or relatives who had law enforcement training or experience. None of her friends or relatives had been victims, witnesses, or arrested or charged with a crime such as this one. She had not witnessed, complained about or had any experience with drug trafficking. She stated that her birthday was at the end of the month and her husband planned a one week vacation. However, she said that the trip would not make her feel that she had to rush to judgment. She had lived in Oakland for seven years, and was a housewife. Her husband worked as an electrical engineer. All of that was very neutral. However, she said that, "I don't like to sit in judgment on anyone." She stated that she did not like to judge people because of her belief in God. But she indicated that this attitude would not prevent her from answering factual questions, nor would it prevent her from determining which witnesses were credible. The facts of a planned vacation and her expressed unwillingness to judge others would be valid, racially neutral, reasons for exercising a peremptory challenge as to her.

The prosecutor used his third peremptory challenge to excuse Mr. Lynch. Mr. Lynch had never served on a jury. Neither he nor his friends or relatives had law enforcement training. He never witnessed narcotics transactions. He had lived in Oakland for five years, and worked as an aircraft mechanic at Oakland Airport. His family consisted of a wife and three children. His wife was a communications manager. He stated that he could perform the duties of a juror and be fair and impartial. Nothing said by

Mr. Lynch indicates any objective basis for excusing him. But of course the record does not disclosed his demeanor or other traits discernable only from observation.

The prosecutor used his sixth peremptory challenge to exclude Ms. Thompson–Turner. Ms. Thompson–Turner had served on a jury in a drunk driving case about seven years previously. She had no close friends or relatives who had ever been a victim or witness to a crime, or been arrested or charged with a crime. She said that she had seen what she assumed was drug trafficking, but that it would not influence her in this case. She had lived in Oakland all of her life, worked as a teacher, and was divorced. She said that she could be a fair and impartial juror. Again, that written record disclosed nothing that would be a reason to excuse her.

The trial court of course heard all of those responses to the *voir dire* questions, and was also able to observe the demeanor or other traits of the jurors. Again in the context of the jury selection, when petitioner and his codefendant made their *Batson* motion, the prosecutor had exercised six peremptory challenges, and had passed the jury panel twice while the jury still contained three black jurors.

### E.

■ When ruling that the defendants had not made a *prima facie* showing, the trial court relied on the fact that three black persons remained on the jury and one remained in the venire. A prosecutor's acceptance of black jurors is a factor that a trial judge may use as an indication of the lack of discriminatory intent. *See United States v. Bishop,* 959 F.2d 820, 827 (9th Cir.1992). *Bishop* explains that the prosecutor's acceptance of black jurors may be considered as an indication of non-discriminatory motive, but cannot alone be used to excuse *actual* discrimination. 959 F.2d at 827.

*Vasquez–Lopez* confirms that it is appropriate for the trial court to consider the impact of the government's challenges on the composition of the jury. 22 F.3d at 902. However, the trial court may not rely *solely* on the fact that some black people remain on a jury after selection is completed. *Palmer,* 985 F.2d at 458. *Palmer* held:

> In formulating [the *Batson*] analytical framework, the Court expressly declined to devise "particular procedures to be followed upon a defendants's timely objection to a prosecutor's challenges."

> Even without formally established procedures, a trial court may not rely solely on the fact that some Blacks remain on a jury after selection is completed. A trial court may, however, take into account a prosecutor's acceptance of Black jurors when determining whether the prosecutor has intentionally discriminated against Blacks. Thus, a trial court may consider, but may not rely solely on, the existence of Blacks on a jury when determining whether a prosecutor has violated *Batson.*

*Id.* (citations omitted).

■ Petitioner argues that the trial court relied *solely* on the fact that other black jurors remained, and thus committed error under *Palmer.* Certainly the only argument that the prosecutor offered on the record was the fact that several black jurors remained on the jury. However, defense counsel asserted that he needed to make a complete record of the circumstances as well, and he summarized the responses of the challenged jurors. Thus, defense counsel advised the court that *other* circumstances surrounding the challenges were relevant. The court indicated that he "also" considered the fact there were other black jurors whom the prosecutor had passed. The trial court's use of the word "also," coupled with the defendant's argument regarding the circumstances of the challenges, show that the trial court did not rely *solely* upon the presence of other blacks on the jury in violation of *Palmer.*

■ The trial court did not make any specific finding regarding the similarity of the treatment of the other potential jurors. But the California Court of Appeals which determined this issue on appeal held that, "[t]he questioning of all jurors was about the same regardless of race." (April 16, 1992 Opinion at 19). Where a trial record is ambiguous, "a state appellate court's factual findings are deemed to be 'fairly supported by the record'

within the meaning of section 2254(d)(8)." *Palmer*, 985 F.2d at 459.

Discrimination is not established merely by the fact that persons of a recognized race have been removed from the jury in a disproportionate manner. The defendant is required to show other circumstances showing racial bias. *Chinchilla* held: "It is important to emphasize that the challenge of two minority jurors does not, in and of itself, create a *prima facie* case of purposeful discrimination. There is no magic number of challenged jurors which shifts the burden to the government to provide a neutral explanation for its actions. Rather, the combination of circumstances taken as a whole must be considered." 874 F.2d at 698.

The state trial and appellate courts here concluded that the other circumstances did not so indicate. This court is required to grant deferential review to this finding. It does not appear that there was clear error.

Petitioner argues that because the facts were close, the trial court erred by not finding a *prima facie* case. *Chinchilla* said that "although the striking of one or two members of the same racial group may not always constitute a prima facie case, it is preferable for the court to err on the side of defendant's rights to a fair and impartial jury." *Id.* at 698 n. 5. But this case is distinguishable from *Chinchilla* because not all of the jury members of defendant's race were excused here. *Chinchilla* did not mandate erring on the side of all defendants' claims.

### F.

This court therefore finds and concludes that the state trial judge did not commit constitutional error in the selection of the jury, and the jury was not chosen in a racially discriminatory manner.

### IV.

Petitioner asserts that his constitutional rights were violated by the admission of hearsay evidence, because the co-conspirator exception to the hearsay rule had not been established and the admission of certain hearsay statements therefore violated his constitutional right to confrontation.

### A.

The admissibility of evidence is a matter of state law and improper admission of evidence does not usually violate the United States Constitution and is not normally cognizable in federal *habeas corpus*. *See Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Nevertheless, there can be *habeas* relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. *See Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994).

### B.

Petitioner alleges that he was convicted of murder and attempted murder on the theory that he was a co-conspirator, but that there was insufficient evidence that he was a conspirator. He asserts that the only evidence of his guilt was the admission of co-conspirators' statements. Petitioner argues that the conspiracy evidence against him came exclusively from witness Devvie Brooks.

The state trial transcript provides the following evidence which shows petitioner's involvement in a conspiracy: There was evidence that Chaney, petitioner's codefendant and alleged co-conspirator, sold cocaine on the corner of Harper and Fairview. Petitioner was seen on the same corner on numerous occasions, selling rock cocaine. Victim Hockenhull was a friend of Chaney, but Chaney and Hockenhull argued about whether Hockenhull could sell drugs on that corner. On the night of the murder petitioner, Chaney and others were together on the corner. Chaney told Hockenhull's girlfriend to go inside because he did not want her "caught up in the cross-fire." Hockenhull went to the corner and argued with Chaney. Witness Vann heard Chaney say "You can't sell on the corner. If you do, I'm going to kill you." Hockenhull left the corner, obtained firearms and returned armed.

Witness Brooks was at Hockenhull's house. Brooks heard people talking outside the house. She saw petitioner and Chaney talk-

ing. She heard Chaney "fussing about the fact that they should have popped [Hockenhull] when they had the chance." She later testified that the exact words she heard were, "you should have popped him when you had the chance." She then heard someone say "here they come." She saw petitioner run or walk to an area behind some cars. Chaney, Robinson and Rollins approached Vann, Bender and Hockenhull just before the moment of the shooting. She heard shots and saw sparks coming from the area where petitioner had run.

Petitioner argues that the trial court should not have admitted Brook's statement, "you should have popped him when you had the chance," because it did not qualify as a co-conspirator statement. The federal and the California evidentiary standards for admitting co-conspirator statements are very similar. A statement is not hearsay under state law if (1) the declarant was participating in a criminal conspiracy at the time of the declaration; (2) the declaration was in furtherance of the conspiracy; and (3) the party against whom the declaration was offered was participating in the conspiracy. The state appellate court concluded, "The necessary evidence [to prove the preliminary facts required by California Evidence Code section 1223] was established herein by testimony that petitioner and Chaney were part of the group that gathered together to shoot the victims."

Under the federal standard, to admit a hearsay statement of a co-conspirator the government must establish (1) the existence of a conspiracy, (2) defendant's connection to the conspiracy, and (3) that the statement was made during and in furtherance of the conspiracy. *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir.1987).

Petitioner argues that there is insufficient evidence that the declaration was in furtherance of the conspiracy, because it stated nothing about any *future* plan or goal and constituted mere complaining. However, the evidence of the chain of the events (*i.e.* competition for drug sales in an area where petitioner sold; Chaney's threats in petitioner's presence to kill Hockenhull;

someone yelling "here they come;" petitioner taking a position behind cars; and Hockenhull and Bender are shot) indicates that the statement that you should have popped him before was encouragement to shoot him moments later. That was also corroborated by the testimony that sparks came from petitioner's location.

A statement is made in furtherance of a conspiracy if it is made to keep a person abreast of the conspirator's activities, to induce continued participation in the conspiracy, or to allay fears. *Crespo de Llano*, 838 F.2d at 1017. It is also made in furtherance of a conspiracy if the statement is made by the declarant to induce the hearer to cooperate or assist in the common objective. *United States v. Zavala–Serra*, 853 F.2d 1512, 1516 (9th Cir.1988). The statement that you, "should have popped him" was one indicating continued participation or inducement to cooperate; or at least was Chaney keeping petitioner advised of the progress of the show-down.

Petitioner also argues that there was insufficient other evidence that he participated in the conspiracy. However, there was evidence that he sold drugs with Chaney, that he was present and speaking with the others prior to the arrival of the victims, and that sparks were seen coming from his direction. This evidence is sufficient to show that he participated in the conspiracy.

Finally, petitioner argues that the statement could not be used against him because there was insufficient evidence that he was present when the statement was made. However, Brooks testified that she saw petitioner with Chaney prior to and after the statement. Further, federal authority holds that a co-conspirator's statement need not be made *to* a member of the conspiracy in order to be admissible under the co-conspirator exception. *Id.* at 1516.

Brooks' testimony was properly admitted, under both state and federal standards, as the alleged hearsay was the statement of a co-conspirator.

## V.

Petitioner contends that certain instructions given by the state trial court violated his constitutional rights.

■ When addressing a *habeas* claim regarding an improper state trial jury instruction, a federal court must determine whether the instruction was erroneous and so infected the trial that the resulting conviction violates due process. *McGuire*, 502 U.S. at 71–72, 112 S.Ct. at 481–82. "It must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some constitutional right." *Id.* at 72, 112 S.Ct. at 482.

### A.

■ Petitioner argues that the trial court gave two conflicting instructions which confused the jury and violated his right to be convicted only by proof beyond a reasonable doubt. The court instructed the jury that evidence admitted against only one defendant could only be considered against that defendant and not the other defendant. However, the court also instructed that the jury could use Chaney's statement against petitioner if it found that Chaney made a statement in furtherance of an existing conspiracy and that petitioner was part of that conspiracy. (CALJIC 6.24). The court also instructed the jury that the instructions were to be considered as a whole.

The statements admitted only against Chaney were the threats he made to Hockenhull and the warning to Vann to go inside so she would not be caught in the cross-fire. After that testimony was given, the court instructed the jury that it should only be considered against Chaney and not against petitioner.

Petitioner argues that the instructions were conflicting. He cites authority holding that when a judge gives a jury two conflicting instructions, one correct and one incorrect, and where it cannot be determined upon which instruction the jury relied, a new trial is required. *See Francis v. Franklin*, 471 U.S. 307, 322, 105 S.Ct. 1965, 1975, 85 L.Ed.2d 344 (1985).

However, petitioner has not established that either instruction told the jury to apply an incorrect legal standard. Further, the two instructions were not in conflict with each other. The trial transcript shows that the jury was instructed not to consider certain statements of Chaney against petitioner. The jury instructions reminded the jury only to use that evidence against Chaney. The prosecution did not seek to use that statement directly against petitioner. And the instructions regarding co-conspirator statements explained that the jury could not consider statements against petitioner unless other independent evidence showed that a conspiracy existed at the time the statement was made, that the statement was made while the declarant was participating in the conspiracy, that petitioner was participating in the conspiracy before and during that time and that the statement was made in furtherance of the objective of the conspiracy.

There is no conflict in those positions. They were both accurate and not mutually exclusive. There is no reason to believe that the jury misapplied the instructions.

### B.

■ Petitioner argues that the only evidence of intent or premeditation were Chaney's threats to the victim and Chaney's warning to Vann to go inside and get out of the cross-fire. Petitioner argues that the jury improperly used that evidence to find petitioner guilty of first degree murder. However, the jury was instructed when that evidence came in that it should be used only against Chaney. And the jury instructions on the admission of the coconspirator statements were accurate.

The instructions did not tell the jury to presume that petitioner was guilty, as he now argues. The jury was instructed to decide separately whether each of the defendants was guilty or not guilty. The jury was instructed that evidence that a person was in the company of or associated with one or more other persons proved to have been members of a conspiracy was *not* in itself sufficient to prove that such person was a member of the alleged conspiracy. They were instructed that a finding of guilt must be such that it cannot be reconciled with any

other rational conclusion. And they were instructed that each fact which was necessary to establish a defendant's guilt must be proved beyond a reasonable doubt.

The instructions were correct. And petitioner offers no cause to believe that the jury did not follow them.

### VI.

The evidence against petitioner was certainly less than the direct testimony of an eye-witness who saw petitioner fire shots. But petitioner could properly be convicted on the basis of being a conspirator with Chaney, who fired the shots that hit the victims. The court concludes that the evidence and the jury instructions on conspiracy were not constitutionally defective. And the record does not establish that the jury was selected in a racially discriminatory manner.

It is therefore ORDERED that the petition for a writ of *habeas corpus* is denied.