52 F.3d 334
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James Harvey MORRIS, Petitioner-Appellant,
v.
Eddie YLST, Warden, Respondent-Appellee.
 No. 92-15906.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 13, 1994.
Decided April 19, 1995.
 
 Before: TANG, SCHROEDER, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 James Harvey Morris, who is black, appeals the denial of his habeas corpus petition challenging his state court conviction for voluntary manslaughter and use of a firearm arising out of a shooting in a shopping mall parking lot. Morris' state appeals were unavailing and the district court adopted the magistrate judge's recommendation that the record contained no reasonable basis for concluding that the exclusions were racially motivated. His principal habeas claim is that the state trial court judge violated the principles enunciated in Batson v. Kentucky, 476 U.S. 79 (1986), by overruling defense counsel's objections to the prosecution's use of peremptory challenges to strike all three black members of the venire panel. We hold that the trial court did not err in ruling that in the particular circumstances of the case, no reasonable inference of discrimination could be drawn.
 
 
 3
 To establish a prima facie case of discriminatory use of peremptory challenges, a defendant must show that the prosecution has exercised the challenges to remove from the venire members of the defendant's race, and that "these facts and any other relevant circumstances raise an inference" that the prosecution excluded the potential jurors on account of their race. See Batson at 96. (Emphasis added). Once the defendant has made a prima facie showing, the burden shifts to the prosecution to come forward with a neutral explanation for challenging black jurors. See id. at 97. The trial court then determines if the defendant has established purposeful discrimination. See id. at 98.
 
 
 4
 The prosecution used two of its first four peremptory challenges to strike two black jurors. In response to the defense objection, the trial court noted that one juror had previously been charged with attempted murder and acquitted, and the other had a husband currently in jail for murder. At defense counsel's request, the court asked the prosecutor the reason for the challenges, and after reiterating the reasons stated by the trial court judge, the prosecutor observed that under the circumstances he did not believe either of those jurors could be fair.
 
 
 5
 There is no serious contention that these challenges gave rise to any inference of discrimination. Even had an inference been created, the prosecution satisfied its burden by proffering a neutral explanation.
 
 
 6
 The only real dispute concerns the challenge to and removal of the third black juror. During the course of the proceedings, the third black potential juror reported to the jury commissioner, who in turn reported to the trial judge, that the defendant had greeted that juror in the hallway during a recess. See R.T. at 33-35 (Sept. 14, 1987). According to the trial judge, the defendant was "clearly mindful of the fact" that such communication would be improper. See id. at 33. The prosecutor peremptorily challenged that juror and defense counsel moved for a mistrial claiming a Batson violation. The prosecutor responded that the defense had not made out a prima facie case because the reasons for the challenge to each of the jurors was quite evident.
 
 
 7
 The fact that all three black potential jurors were challenged does not, in and of itself, create a prima facie case of purposeful discrimination. See United States v. Chinchilla, 874 F.2d 695, 698 (9th Cir.1989) (noting that the challenge of all Hispanic jurors did not, ipso facto, create a prima facie case). Our law rejects the view that there is a "magic number of challenged jurors" which shifts the burden to the government to provide a neutral explanation for its actions. See id. at 698; see also Batson at 101 (White, J., concurring) (noting that it is not per se unconstitutional, without more, to strike one or more blacks from a jury). Rather, consistent with Batson, the combination of circumstances taken as a whole must be considered. See Chinchilla at 698. Finally, in reviewing the trial court's failure to find a prima facie case, we are mindful of Batson 's teachings:
 
 
 8
 We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
 
 
 9
 Batson at 97.
 
 
 10
 The trial court judge explained that the prosecution struck the third juror out of concern that contact with the defendant would call into question the juror's ability to be impartial. See R.T. at 34 (Sept. 14, 1987). Defense counsel requested the prosecutor to supply, on the record, its reasons for the challenge. The prosecutor volunteered to do so, but the trial judge rejected this offer, stating that the basis for the exclusion was self-evident. See id. at 35-36.
 
 
 11
 The petitioner relies on Batson to contend that the trial judge should have asked the prosecutor to supply a neutral explanation. See Batson at 97 (once the defendant has made a prima facie showing the burden shifts to the state). The preliminary issue is, however, whether the necessary inference was raised.
 
 
 12
 The trial court was cognizant of the unusual circumstances surrounding the defendant's contact with the third juror. There is no question that the defendant contacted the potential juror. The trial court's comments reflect it believed the defendant had attempted to influence the juror. The court found, in essence, that the defendant had not raised the necessary inference to create a prima facie case. There is no basis to reverse that assessment. This court has never recognized the existence of a prima facie case of discriminatory use of peremptory challenges in a situation like this one, where the trial court relied on other circumstances to negate such an inference. In Chinchilla, we found a prima facie case had been established where there were no other circumstances to indicate a non-racially based use of the peremptory challenges. See 874 F.2d at 695. Here, those other circumstances clearly existed.
 
 
 13
 The petitioner's remaining challenges to his conviction are without merit. The failure of the state court to instruct on a lesser offense generally presents no federal constitutional question. James v. Reese, 546 F.2d 325, 327 (9th Cir.1976). Although a defendant may suffer a due process violation where his theory of the defense is not adequately presented in jury instructions, in this case Morris' counsel affirmatively indicated that he did not wish an instruction on involuntary manslaughter given to the jury. See Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir.), cert. denied, 469 U.S. 838 (1984).
 
 
 14
 Petitioner challenges the prosecutor's comments about his pre-arrest silence. The prosecution noted to the jury that appellant did not initially tell the police that he had acted in self-defense. The silence that was commented upon occurred before petitioner had been arrested and before he had been given Miranda warnings. Absent Miranda warnings, the use of defendant's silence for impeachment purposes, when he testifies at trial, is not constitutionally impermissible. See United States v. Greene, 698 F.2d 1364 (9th Cir.1983).
 
 
 15
 Finally, a sleeping juror does not constitute juror misconduct violating a defendant's due process rights unless the defendant was prejudiced to the extent that he did not receive a fair trial. See United States v. Barrett, 703 F.2d 1076 (9th Cir.1983). No prejudice has been demonstrated.
 
 
 16
 AFFIRMED.
 
 
 17
 REINHARDT, Circuit Judge, dissenting.
 
 
 18
 Because the trial court's procedure here, in my view, fails to comport with the dictates of Batson, I dissent. Although the facts are adequately set out in the majority's disposition, I wish to point out that at no time during the discussion before the trial court, did anyone mention Batson. Presumably, this was because the trial occurred only a few short months after the Court decided Batson, and the parties were unfamiliar with it. Thus, I think that it is highly unrealistic for us to proceed as if the trial court had conducted an analysis which it simply did not conduct.
 
 
 19
 In response to the defense motion for a mistrial, the prosecution stated that the defense had failed to establish a prima facie case under the three part California test for analyzing challenges to peremptory strikes. Then, the trial judge identified what he thought were the apparent reasons for exclusion. He reiterated the previous problems with the first two jurors, and then stated what he assumed to be the prosecutor's problem with the third juror. He noted that the defendant had had some kind of verbal contact with the juror in the hallway. Apparently, the defendant offered a greeting to her during a recess. Immediately thereafter, the juror had reported the occurrence to the Jury Commissioner. On this basis, the trial court concluded:
 
 
 20
 I understand--I'm confident in my own view Mrs. Banks would not be a prejudiced or biased [juror] but, you know, what--it's just an odd circumstance that the one remaining Black juror that your client would have had any interchange whatever with her. Why do that? ...
 
 
 21
 (RT 34). The court reasoned that because it could discern a non-improper motive for the exclusion, there was no basis for questioning the prosecutor.
 
 
 22
 This analysis bears little relationship to the requirements of Batson. Under the analysis employed by the trial judge, because the trial judge could supply a nondiscriminatory reason for exclusion, Morris had failed to establish a prima facie case. In his view, unless the basis for the challenge was inexplicable from the record, there was no reason to ask the prosecutor to state his reasons.
 
 
 23
 Under Batson, the appropriate question to ask in evaluating a prima facie case is whether the facts and relevant circumstances raise an inference of purposeful discrimination. See Batson, 106 S.Ct. at 1723. This is a much lighter and easier burden than the question posed by the trial court here: "Does the record disclose a non-improper motive?" Not only is this latter question a sharp departure from the Batson framework, but under the trial court's formulation, a defendant would rarely be able to establish a prima facie case, even when the prosecutor is actively discriminating. So long as the trial court can itself conceive of a plausible non-racial explanation, the prosecutor's true motives are insulated from scrutiny.
 
 
 24
 Additionally, the reason supplied by the trial court seems itself highly suspect. First, the trial court stated that he found it problematic that the defendant had greeted the only remaining black juror. Thus, the race of the juror was relevant to evaluating the significance of the exchange. A simple greeting should not be extrapolated into some bond of kinship that is likely to make the juror acquit. It has long been this type of "kinship" rationale which has motivated race-based exclusions of jurors.
 
 
 25
 Second, the trial court stated that it would be best to have a juror "who has absolutely no connection with anybody, who's absolutely clean, there's no potentiality for confusion of her duties and her motive and so forth." However, earlier in the proceedings, defense counsel complained that the victim's wife was mingling with the potential jurors. There is no indication in the record that any of these "tainted" jurors were excused. This would seem to undermine the judge's "absolutely no connection with anybody" rationale.
 
 
 26
 It is highly disturbing that the trial court elected to speculate and supply his own purportedly neutral reasons rather than allow the prosecutor to state the actual reasons for his actions. Even assuming that the reasons suggested by the trial court are not themselves somewhat pretextual, the procedure of having the trial court supply potential neutral non-racial grounds severely undermines the protections imposed by Batson. It does grave disservice to the constitutional principles that Batson is designed to protect to have courts search for some neutral explanation for a peremptory challenge. The required inquiry focuses on determining the actual reasons for the strike and scrutinizing them for bias. The analytical process followed by the trial court falls far short of that required by Batson.
 
 
 27
 Because here we have no record of the actual reasons the prosecutor challenged the third juror, in most circumstances a remand for an appropriate evidentiary hearing would be in order. However, the long passage of time in this case would render such a hearing meaningless. Cf. United States v. Alcantar, 897 F.2d 436 (9th Cir.1990) (finding two year lapse too long). More than seven years has passed since the jury selection in this case. It is unlikely that an adversary hearing in either the district court or the trial court could provide a meaningful procedure for testing the neutrality of the prosecutor's reasons. Accordingly, I would simply vacate the conviction. Thus, I respectfully dissent from the majority's disposition of this case.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3